## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **STACEY GALPERIN, MIRIAM ROCEK, HANNAH SHAFFER, HEIDI SHAFFER, and MARLENE DEVONSHIRE, as the Natural Guardian of MD, a minor** | : : : : : : | |
| **Plaintiffs,** | : : | |
| **v.** | : : | **Civil Action No.:** |
| **DELAWARE STATE POLICE SERGEANT MARK DIJIACOMO, and JANE DOE** | : : : | **JURY TRIAL DEMANDED** |
| **Defendants.** | : : | |

## COMPLAINT

1.     Plaintiffs Stacey Galperin, Miriam Rocek, Hannah Shaffer, Heidi Shaffer and Marlene Devonshire, as the natural guardian of MD, file this Complaint against Sergeant Mark DiJiacomo of the Delaware State Police and Jane Doe, an as yet unidentified person, who conspired to violate Plaintiffs' First Amendment civil rights to free speech, free assembly and to petition for redress of grievances and whose conspiracy resulted in the unconstitutional arrest of Plaintiffs Stacey Galperin and Miriam Rocek.

2.     Defendants conspired to expel Plaintiffs Galperin, Rocek, Hannah Shaffer, and MD from the site of a public book signing and discussion held by United States Senator Rick Santorum solely because of Plaintiffs' political beliefs and the viewpoint of Plaintiffs' speech and without consulting the management of the Barnes and Noble bookstore where the event was to occur. Defendant DiJiacomo threatened to arrest Plaintiffs Galperin, Rocek, Hannah Shaffer

and MD if they did not immediately leave the store and subsequently arrested Plaintiffs Galperin

and Rocek. Sergeant DiJiacomo's threats of arrest of all Plaintiffs and actual arrest of Plaintiffs

Galperin and Rocek prevented all but one of the Plaintiffs from hearing from Senator Santorum,

including Plaintiffs who are Pennsylvania residents and constituents of the Senator, and

prevented Plaintiff Heidi Shaffer from speaking with Senator Santorum, her representative.

      3.     Plaintiffs seek redress for the deprivation of their First and Fourth

Amendment rights and for the emotional distress caused by Sergeant DiJiacomo's false arrest

and unlawful threats.

## THE PARTIES

      4.     Plaintiff Stacey Galperin is a United States citizen and a Delaware

resident.

      5.     Miriam Rocek is a United States citizen and a Delaware resident.

      6.     Hannah Shaffer is a United States citizen and a Pennsylvania resident.

      7.     Heidi Shaffer is a United States citizen and a Pennsylvania resident.

      8.     Marlene Devonshire and MD are United States citizens and Pennsylvania

residents.

      9.     Delaware State Police Sergeant Mark DiJiacomo is, on information and

belief, an individual residing in the state of Delaware.

      10.    Jane Doe is an individual whose actual name and place of residence is not

currently known. At the time of the events described in this Complaint she was, on information

and belief, employed as a member of Senator Santorum's promotional team.

## JURISDICTION AND VENUE

11.     Plaintiffs seek to vindicate their rights protected by the First, Fourth and Fourteenth Amendments to the United States Constitution and by 42 U.S.C. § 1983, their right to be free of false arrest and their rights under Article I, sections 6, 9, and 16 of the Delaware Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4) and 1367. This Court has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202 to declare the rights of the parties and to grant all further necessary and proper relief.

12.     Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events that form the basis for this Complaint primarily occurred in this District.

## FACTS

13.     On August 10, 2005, United States Senator Rick Santorum of Pennsylvania ("Senator Santorum" or "Santorum") appeared at the Barnes & Noble book store at 4801 Concord Pike, Wilmington, Delaware 19803 (the "Store" or "Barnes & Noble").

14.     Senator Santorum's appearance was advertised as a signing for his book *It Takes a Family* and as a discussion with the Senator (the "Santorum Event" or the "Event"). The Event took place during the regular hours of operation of the Store.

15.     Barnes & Noble was at all relevant times responsible for deciding whether to open the property to the public or to exclude members of the public from the property.

16.     The Santorum Event was open to the public.

17.     Neither the advertisement for the event nor any of the signs at the Store stated restrictions of any kind on the persons who could attend the event, and specifically neither the advertisement for the event nor any of the signs at the Store indicated that anyone who

3

disagreed with Senator Santorum or who wished to question him regarding his political beliefs and opinions would be excluded. Instead, the Event was billed as a "discussion."

18.     It is alleged on information and belief that prior to August 10, 2005, Senator Santorum's publishing company, ISI Books, or an agent thereof, hired Sergeant Mark DiJiacomo ("Sergeant DiJiacomo" or "DiJiacomo") of the Delaware State Police to attend the Event as a guard under the direction of the organizers.

19.     Sergeant DiJiacomo acted as a guard for the Santorum Event, appearing in full uniform and armed with a visible handgun.

20.     Upon information and belief, while acting as a guard for the Event, DiJiacomo was paid by the Delaware State Police and maintained all powers and duties of his position as a Sergeant with the Delaware State Police.

21.     Plaintiffs Stacey Galperin ("Galperin"), Miriam Rocek ("Rocek"), Hannah Shaffer ("Shaffer"), and MD, along with several friends and classmates, arrived at the Event prior to Senator Santorum's appearance. It was their intention to attend the Event for the purpose of hearing the Senator's remarks and respectfully questioning and challenging the Senator concerning his views during the "discussion" phase of the Event.

22.     While waiting for the Senator to arrive, Plaintiffs Galperin, Rocek, Hannah Shaffer and MD conversed among themselves about their questions for Senator Santorum and about their views on issues of importance to them and to the Senator.

23.     It is alleged on information and belief that Defendant Jane Doe ("Doe"), a member of Senator Santorum's promotional team for the Event, overheard a portion of Plaintiffs' discussion and determined that Plaintiffs should be ejected from the Event because of their

4

political viewpoints and because of a concern that they would publicly express disagreement with Senator Santorum.

          24.    At all times while in the store, Plaintiffs comported themselves in a respectful and civil manner.

          25.    Plaintiff MD was wearing a shirt that displayed the words "Radical Feminist" and Plaintiff Rocek was visibly wearing a gay pride pin. These items were visible to and apparently seen by Defendants Doe and DiJiacomo.

          26.    Defendant Doe did not work for Barnes & Noble and was not instructed by any Barnes & Noble employee or agent to have Plaintiffs ejected.

          27.    Defendants Doe and DiJiacomo discussed the attendance of Plaintiffs Galperin, Rocek, Shaffer and MD at the Event and determined that DiJiacomo would eject Plaintiffs Galperin, Rocek, Shaffer and MD from the Store because of their political viewpoints and because, in defendants' view, plaintiffs "had an agenda" and were likely to express disagreement with Senator Santorum.

          28.    Defendant DiJiacomo approached Plaintiffs Galperin, Rocek, Shaffer and MD, ordered them to leave the premises and told them that if they did not immediately leave they would be arrested for trespass.

          29.    Sergeant DiJiacomo further threatened Plaintiffs Galperin, Rocek, Shaffer and MD by explaining the consequences that an arrest would have on them, including a description of the detention facilities to which they would be taken if arrested and the likely duration of their stay at those facilities.

30.     Sergeant DiJiacomo subsequently threatened Plaintiffs Galperin and Rocek by noting the negative effect that their arrest would have on their prospects for college admission.

31.     Sergeant DiJiacomo subsequently threatened those Plaintiffs over the age of eighteen with prosecution for contributing to the delinquency of those in their group who were minors.

32.     No Barnes & Noble employee or agent ever instructed Defendant DiJiacomo to have Plaintiffs ejected.

33.     No Barnes & Noble employee or agent ever instructed Plaintiffs to leave the Store.

34.     Under threat of arrest, Plaintiffs Shaffer and MD left the premises.

35.     Plaintiffs Galperin and Rocek questioned Defendant DiJiacomo concerning the reason for their ejection from the Store at which point Sergeant DiJiacomo told Plaintiffs Galperin and Rocek that they were under arrest.

36.     Defendant DiJiacomo demanded identification from Plaintiff Galperin, who produced it as ordered.

37.     Sergeant DiJiacomo then ordered Plaintiffs Galperin and Rocek to accompany him to his car, which was parked outside the Store.

38.     Because they had been placed under arrest, Plaintiffs Galperin and Rocek left the Store and accompanied Sergeant DiJiacomo to his vehicle.

39.     Sergeant DiJiacomo demanded that Plaintiff Rocek produce identification, and she complied.

6

40.     Sergeant DiJiacomo took the identification from Plaintiffs Galperin and Rocek into the front of his vehicle. Upon information and belief, he remained there long enough to have run their names through the police computer.

41.     At one point during the time Plaintiffs Galperin and Rocek were standing with him outside, Sergeant DiJiacomo ordered Plaintiff Rocek to put her hands on his car. Plaintiff Rocek complied with this order. Sergeant DiJiacomo stood behind Plaintiff Rocek and told her he was going to handcuff her.

42.     Sergeant DiJiacomo commanded Plaintiffs Galperin and Rocek to call their parents to inform them that they had been arrested. He further told them to tell their parents that they would need $1000 in cash for bail money. Both Plaintiffs complied with this order.

43.     Plaintiff Galperin conversed with her father, who is an attorney. Sergeant DiJiacomo was aware that Mr. Galperin is an attorney based on a conversation with Plaintiff Galperin earlier that evening.

44.     Mr. Galperin was put onto the phone with Sergeant DiJiacomo and requested details of the charge from Sergeant DiJiacomo. Sergeant DiJiacomo provided no details.

45.     Subsequent to Sergeant DiJiacomo's conversation with Mr. Galperin, Plaintiffs Galperin and Rocek were released from custody on the condition that they leave the Store and the Concord Mall. Sergeant DiJiacomo told Plaintiffs Galperin and Rocek that they had been banned for life from the Store and the Concord Mall, and would be arrested if they ever returned.

46.     Sergeant DiJiacomo was never instructed by any member of the Barnes &
Noble staff or management to eject Plaintiffs or to inform Plaintiffs that they had been
permanently banned from the Store.

47.     Upon information and belief, Sergeant DiJiacomo never consulted with
the owners or managers of the Concord Mall regarding either the immediate exclusion or the
purported lifetime ban of Plaintiffs Galperin and Rocek.

48.     From the time that Plaintiffs Galperin and Rocek were told that they were
under arrest until Defendant DiJiacomo released them from custody, they were not free to leave
his custody.

49.     From the time that Plaintiffs Galperin and Rocek were told that they were
under arrest until Defendant DiJiacomo told them they could leave, Plaintiffs believed that they
were under arrest and not free to leave his custody.

50.     After leaving the Store under threat of arrest, Plaintiff Hannah Shaffer
called her mother, Plaintiff Heidi Shaffer ("Mrs. Shaffer") to inform her of what had occurred.

51.     Mrs. Shaffer drove to the mall and picked up Hannah Shaffer and several
of the other students who had been expelled from the Store. With Mrs. Shaffer was her younger
daughter, Alanna Shaffer, and one of Hannah's classmates.

52.     Leaving Hannah Shaffer and the others in the car in the parking lot of the
Store, Mrs. Shaffer went into the Store to find Sergeant DiJiacomo or a store employee who
could explain the expulsion of Plaintiffs Galperin, Rocek, Shaffer, and MD.

53.     While Mrs. Shaffer was in the Store, Sergeant DiJiacomo saw Hannah
Shaffer in the parking lot and drove his vehicle over to her.

54.    Sergeant DiJiacomo again threatened Hannah Shaffer with arrest for trespass and for contributing to the delinquency of the minors with her.

55.    Hannah Shaffer explained that she had returned to the Store's parking lot with her mother, who had gone into the Store seeking Sergeant DiJiacomo.

56.    Sergeant DiJiacomo told Hannah Shaffer that she was under arrest and demanded her identification.

57.    Mrs. Shaffer saw the confrontation in the parking lot and left the Store, approaching Sergeant DiJiacomo and interrupting the attempt to arrest her daughter.

58.    Mrs. Shaffer confronted Sergeant DiJiacomo, who claimed that he had overheard the students saying that they were going to cause trouble on private property and that the students had an "agenda."

59.    At no time did any of Plaintiffs threaten to make or cause any disturbance or take any action or make any statement that could reasonably give rise to a belief that they posed such a threat.

60.    Mrs. Shaffer informed Sergeant DiJiacomo that a Store employee had informed her that Plaintiffs were welcome to return to the Barnes & Noble. Sergeant DiJiacomo replied that neither Barnes & Noble nor the Concord Mall had the authority to allow Plaintiffs to return to the Store.

61.    Sergeant DiJiacomo then threatened Mrs. Shaffer with arrest for contributing to the delinquency of the minors present.

62.    Sergeant DiJiacomo further threatened Mrs. Shaffer by detailing the likely duration of the detention of the minors present.

63.     Plaintiffs Galperin, Rocek, Shaffer, and MD were unable to attend the

Event and express their views to Senator Santorum because they had been ejected from the Store

by Sergeant DiJiacomo before Senator Santorum arrived.

64.     While Mrs. Shaffer was permitted to listen to Senator Santorum, she was

not allowed to participate in any discussion with him or raise her concerns with him because of

Sergeant DiJiacomo's threats against her.

65.     Plaintiffs suffered harm as a result of the threats leveled against them and

by being denied access to a government official because of their political beliefs.

66.     At all times during the events described herein, Sergeant DiJiacomo was

acting under the color of state law and under his authority as an officer of the Delaware State

Police.

## COUNT I

### Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for Violation of Plaintiffs' Right To Freedom Of Speech as Protected by the First Amendment to the U.S. Constitution

67.     Plaintiffs incorporate herein by reference the proceeding paragraphs of

this Complaint.

68.     Acting under color of state law, Defendant DiJiacomo deprived Plaintiffs

of their First Amendment right to freedom of speech by threatening Plaintiffs with arrest and

ejecting Plaintiffs Galperin, Rocek, Shaffer and MD from the Store because of their political

beliefs.

69.     Sergeant DiJiacomo's threats to arrest Plaintiffs and his actual arrest of

Plaintiffs Galperin and Rocek prevented Plaintiffs from exercising their right to speak freely and

express themselves in a public forum.

70.    Defendants' actions violated Plaintiffs' clearly established rights.

71.    Defendants Doe and DiJiacomo acted intentionally to deprive Plaintiffs of their right to free speech and expression under the First Amendment to the United States Constitution, or in wanton, reckless disregard of that right.

72.    Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a conscious indifference to Plaintiffs' constitutional right to free speech and expression.

73.    Plaintiffs were harmed by the deprivation of their constitutional right to free speech and expression by Defendants Jane Doe and Sergeant DiJiacomo and are entitled to redress for that violation and for the emotional damage done to them by Defendants' actions.

## COUNT II

### Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for Violation of Plaintiffs' Right To Freedom Of Assembly as Protected by the First Amendment to the U.S. Constitution

74.    Plaintiffs incorporate herein by reference the proceeding paragraphs of this Complaint.

75.    Acting under color of state law, Defendant DiJiacomo deprived Plaintiffs Galperin, Rocek, Shaffer and MD of their First Amendment right peaceably to assemble by threatening Plaintiffs with arrest and ejecting them from the store because of their political beliefs.

76.    Plaintiffs had gathered at the Store to listen to a government official speak on matters of public interest.

77.    Plaintiffs Hannah Shaffer, Heidi Shaffer, and MD had gathered at the Store to listen to their own elected representative speak on matters of public interest.

11

78.     Plaintiffs were at all times peaceful.

79.     Because of Sergeant DiJiacomo's threats of arrest and actual arrest of Plaintiffs Galperin and Rocek, Plaintiffs Galperin, Rocek, Shaffer, and MD were forced to leave a location where they had a right to gather unless excluded by the store management in control of the premises.

80.     Defendants' actions violated the clearly established rights of Galperin, Rocek, Shaffer, and MD.

81.     Defendants Doe and DiJiacomo acted intentionally to deprive Plaintiffs Galperin, Rocek, Shaffer, and MD of their right peaceably to assemble under the First Amendment to the United States Constitution, or in wanton, reckless disregard of that right.

82.     Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a conscious indifference to Plaintiffs' constitutional right peaceably to assemble.

83.     Plaintiffs Galperin, Rocek, Hannah Shaffer, and MD were harmed by the deprivation of their constitutional right peaceably to assemble by Defendants Jane Doe and Sergeant DiJiacomo and are entitled to redress for that violation and for the emotional damage done to them by Defendants' actions.

## COUNT III

### Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for Violation of Plaintiffs' Right To Petition for Redress of Grievances as Protected by the First Amendment to the U.S. Constitution

84.     Plaintiffs incorporate herein by reference the proceeding paragraphs of this Complaint.

12

85.    Acting under color of state law, Defendant DiJiacomo deprived Plaintiffs of their First Amendment right to petition government officials for a redress of grievances by threatening Plaintiffs with arrest and ejecting them from the store in order to prevent their intended discussion with Senator Santorum.

86.    Plaintiffs had gathered at the Store to participate in a discussion with a government official on matters of public interest.

87.    Plaintiffs Hannah Shaffer, Heidi Shaffer, and MD had gathered at the Store to participate in a discussion with their own elected representative on matters of public interest.

88.    Sergeant DiJiacomo's threats of arrest and actual arrest of Plaintiffs Galperin and Rocek prevented Plaintiffs from petitioning a government official for the redress of their grievances.

89.    Defendants' actions violated Plaintiffs' clearly established rights.

90.    Defendants Doe and DiJiacomo acted intentionally to deprive Plaintiffs of their right to petition for redress of grievances under the First Amendment to the United States Constitution, or in wonton, reckless disregard of that right.

91.    Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a conscious indifference to Plaintiffs' constitutional right to petition for redress of grievances.

92.    Plaintiffs were harmed by the deprivation of their constitutional right to petition for redress of grievances by Defendants Jane Doe and Sergeant DiJiacomo and are entitled to redress for that violation and for the emotional damage done to them by Defendants' actions.

## COUNT IV

### Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for Violation of Plaintiffs' Right To Be Free of Unreasonable Seizure as Protected by the Fourth Amendment to the U.S. Constitution

93.     Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint.

94.     Acting under color of state law, Defendant DiJiacomo deprived Plaintiffs Galperin and Rocek of their Fourth Amendment right to be free from unreasonable seizure by arresting them without probable cause.

95.     Sergeant DiJiacomo was never instructed by the owner, manager, or any employee of the Store to remove Plaintiffs or told that Plaintiffs were unwelcome there.

96.     Sergeant DiJiacomo ordered Plaintiffs to leave the Store solely upon his own volition and that of Defendant Doe.

97.     Sergeant DiJiacomo arrested Plaintiffs Galperin and Rocek only because they failed to follow his order, which was unlawful and unjustified because it did not express the desire of the Store management.

98.     Plaintiffs Galperin and Rocek's failure to leave the Store, where they had the constitutional right to remain, was reasonably foreseeable to Defendants DiJiacomo and Doe.

99.     Defendant DiJiacomo's arrest of Plaintiffs when they failed to leave the Store was reasonably foreseeable to Defendants DiJiacomo and Doe and was an action in furtherance of the conspiracy to deprive Plaintiffs Galperin and Rocek of their rights under the First and Fourth Amendments to the United States Constitution.

100.    Defendant DiJiacomo's arrest of Plaintiffs Galperin and Rocek without probable cause violated their right under the Fourth Amendment to the United States Constitution to be free from an unreasonable, warrantless seizure of their persons.

101.    Defendants' actions violated Plaintiffs' clearly established rights.

102.    Defendant DiJiacomo acted intentionally to deprive Plaintiffs Galperin and Rocek of their constitutional rights under the Fourth Amendment to the United States Constitution, or in wanton, reckless disregard of those rights.

103.    Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a conscious indifference to the constitutional rights under the Fourth Amendment of Plaintiffs Galperin and Rocek.

104.    Plaintiffs Galperin and Rocek were harmed by the deprivation of their constitutional rights by Defendants Jane Doe and Sergeant DiJiacomo and are entitled to redress for that violation and for the emotional damage done to them by Defendants' actions.

## COUNT V

### Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for Conspiracy to Violate Plaintiffs' Rights Under the First and Fourth Amendments to the U.S. Constitution

105.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint.

106.    Upon information and belief, Defendants Doe and DiJiacomo, and perhaps other individuals acting in concert therewith, entered into a combination, agreement, or understanding to violate Plaintiffs' constitutional rights under the First and Fourth Amendments by using the apparent authority of Defendant DiJiacomo to threaten Plaintiffs with arrest, eject

15

them from the Store, and arrest Plaintiffs Galperin and Rocek, solely because of their political views and without probable cause.

107.    Defendants Doe and DiJiacomo each acted in furtherance of said agreement, combination or understanding by, *inter alia*, discussing the Plaintiffs and deciding to eject them from the Store, threatening Plaintiffs with arrest and arresting Plaintiffs Galperin and Rocek.

108.    The aforementioned conspiracy violates 42 U.S.C. § 1983.

109.    Defendants' actions violated Plaintiffs' clearly established rights.

110.    Defendant DiJiacomo and Defendant Doe acted intentionally to deprive Plaintiffs of their constitutional rights under the First and Fourth Amendments to the United States Constitution, or in wanton, reckless disregard of those rights.

111.    Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a conscious indifference to Plaintiffs' constitutional rights under the First and Fourth Amendments to the United States Constitution.

112.    Plaintiffs were harmed by the deprivation of their constitutional rights by Defendants Jane Doe and Sergeant DiJiacomo and are entitled to redress for that violation and for the emotional damage done to them by Defendants' actions.

## COUNT VI

### Pursuant to Delaware Law for Declaratory Relief and Damages
### for False Arrest and Imprisonment

113.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint.

114.    During the period after Sergeant DiJiacomo told Plaintiffs Galperin and Rocek that they were under arrest and before he released them from custody, they were unlawfully restrained by him.

115.    During that period, Plaintiffs Galperin and Rocek were not free to leave and were under Defendant DiJiacomo's control.

116.    Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a wanton disregard or conscious indifference to Plaintiffs' right to be free from unlawful arrest and imprisonment.

117.    Plaintiffs Galperin and Rocek were harmed by this unlawful detention by Defendants Doe and DiJiacomo and are entitled to redress for that violation and for the harm done to them by Defendants' actions.

## COUNT VII

### Pursuant to the Delaware Constitution for Damages for Unreasonable Seizure

118.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint.

119.    By conspiring to arrest and arresting Plaintiffs Galperin and Rocek without a warrant and without probable cause, Defendants Doe and DiJiacomo violation Plaintiff Galperin and Rocek's rights under Article I, Section 6 of the Delaware Constitution.

120.    Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a wanton disregard or conscious indifference to Plaintiffs' right to be free from unreasonable seizure.

121.    Plaintiffs Galperin and Rocek were harmed by this unlawful detention by

Defendants Doe and DiJiacomo and, pursuant to Article I, Section 9 of the Delaware

Constitution, are entitled to redress for that violation and for the harm done to them by

Defendants' actions.

## COUNT VIII

### Pursuant to the Delaware Constitution for Damages for Violations of Plaintiffs' Right to Assemble

122.    Plaintiffs incorporate herein by reference the preceding paragraphs of this

Complaint.

123.    Plaintiffs' assembly was at all times orderly.

124.    In taking the foregoing actions, including but not limited to threatening

Plaintiffs with arrest, actually arresting Plaintiffs Galperin and Rocek, and ejecting Plaintiffs

Galperin, Rocek, Shaffer and MD from the Store, Defendants Doe and DiJiacomo violated the

rights of Plaintiffs Galperin, Rocek, Shaffer, and MD under Article I, Section 16 of the Delaware

Constitution to assemble in an orderly manner.

125.    Defendants' actions constituted an extreme departure from the ordinary

standard of care and evidenced a wanton disregard or conscious indifference to the right of

Plaintiffs Galperin, Rocek, Shaffer, and MD to assemble.

126.    Plaintiffs Galperin, Rocek, Shaffer, and MD were harmed by this unlawful

detention by Defendants Doe and DiJiacomo and, pursuant to Article I, Section 9 of the

Delaware Constitution, are entitled to redress for that violation and for the harm done to them by

Defendants' actions.

18

## COUNT IX

### Pursuant to the Delaware Constitution for Damages for Violations of Plaintiffs' Right to Redress of Grievances

127.    Plaintiffs incorporate herein by reference the preceding paragraphs of this Complaint.

128.    In taking the foregoing actions, including but not limited to threatening Plaintiffs with arrest, actually arresting Plaintiffs Galperin and Rocek, and ejecting Plaintiffs Galperin, Rocek, Shaffer and MD from the Store, Defendants Doe and DiJiacomo violated Plaintiffs' rights under Article I, Section 16 of the Delaware Constitution to apply for redress of grievances.

129.    Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a wanton disregard or conscious indifference to Plaintiffs' right to apply for redress of grievances.

130.    Plaintiffs were harmed by this unlawful detention by Defendants Doe and DiJiacomo and, pursuant to Article I, Section 9 of the Delaware Constitution, are entitled to redress for that violation and for the harm done to them by Defendants' actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Stacey Galperin, Miriam Rocek, Hannah Shaffer, Heidi Shaffer, and Marlene Devonshire, as natural guardian of MD, demand judgment in their favor and against Defendants Sergeant Mark DiJiacomo and Jane Doe, including the following:

(a) A declaration that the constitutional rights of Plaintiffs have been violated;

(b) Nominal, compensatory and punitive damages in an amount to be proven at trial;

19

(c) Attorneys' fees and costs of suit;

(d) Such other relief as the Court deems to be just and proper.

ROSENTHAL, MONHAIT, & GODDESS, P.A.

By

Norman M. Monhait (Attorney ID No. 1040)
919 Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433
(302) 658-7567 - facsimile

*Of Counsel:*

HANGLEY ARONCHICK SEGAL & PUDLIN

Gordon A. Einhorn
Paul W. Kaufman
30 North Third Street, Suite 700
Harrisburg, PA 17101
(717) 364-1004
(717) 364-1020 – facsimile

AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA

Mary Catherine Roper
P.O. Box 40008
Philadelphia, PA 19106
(215) 592-1513 x. 116
(215) 592-1343 – facsimile

Witold Walczak
313 Atwood Street
Pittsburgh, PA 15213
(412) 681-7736
(412) 681-8707 – facsimile

20

Seth Kreimer
3400 Chestnut Street
Philadelphia, PA 19104
(215) 898-7447
(215) 573-2025 – facsimile

AMERICAN CIVIL LIBERTIES FOUNDATION OF DELAWARE

Julia Graff (Attorney ID No. 4708)
100 W. 10th Street, Suite 309
Wilmington, DE 19801
(302) 654-5326 x. 103
(302) 654-3689 – facsimile

*Attorneys for Plaintiffs*

Dated:  May 30, 2006

⊗JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS Stacey Galperin, Miriam Rocek, Hannah Shaffer, Heidi Shaffer, and Marlene Devonshire, as the Natural Guardian of MD, a minor | DEFENDANTS Delaware State Police Sergeant Mark DiJiacomo and Jane Doe |
|---|---|
| (b) County of Residence of First Listed Plaintiff _____ (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant   New Castle (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| (c) Attorney's (Firm Name, Address, and Telephone Number) Norman M. Monhait, Esquire Rosenthal Monhait & Goddess, P.A., 919 Market Street Wilmington, Delaware 19899-1070 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |    Liability    ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &    Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
|    & Enforcement of Judgment |    Slander    ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent |    Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |    Liability    Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|    Student Loans | ☐ 340 Marine    **PERSONAL PROPERTY** |    Safety/Health | | ☐ 490 Cable/Sat TV |
|    (Excl. Veterans) | ☐ 345 Marine Product    ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment |    Liability    ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) |    Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    Property Damage |    Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract |    Product Liability    ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI |    12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |    Injury |    & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting    ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation |    or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment    Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/    Habeas Corpus: |    Security Act |    26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land |    Accommodations    ☐ 530 General | | |    Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare    ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | | |    Under Equal Access |
| |    Employment    ☐ 550 Civil Rights | | |    to Justice |
| | ☐ 446 Amer. w/Disabilities -    ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| |    Other | | |    State Statutes |
| | ☒ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §1983, U.S. Const. First, Fourth & Fourteenth Amendments
Brief description of cause:
Claim for violations of plaintiffs' constitutional rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____ DOCKET NUMBER _____

DATE  May 30 2006    SIGNATURE OF ATTORNEY OF RECORD  Norman M. Monhait

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 6 – 3 5 9

# ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___3___ COPIES OF AO FORM 85.

_____       _____
(Date forms issued)                  (Signature of Party or their Representative)

                                     STEPHEN CARPENTER
                                     (Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action