IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STACEY GALPERIN, MIRIAM ROCEK, HANNAH SHAFFER, HEIDI SHAFFER, and MARLENE DEVONSHIRE, as the Natural Guardian of MEGHAN DEVONSHIRE, a minor<br><br>Plaintiffs,<br><br>v.<br><br>DELAWARE STATE POLICE SERGEANT MARK DIJIACOMO, and JANE DOE<br>Defendants. | Civil Action No.: 06-359 (GMS)<br><br>JURY TRIAL DEMANDED |

**JOINT STATUS REPORT**

Pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule of Civil Procedure 16.2(b), and in accordance with the Order of the Court dated August 8, 2005, Stacey Galperin, Miriam Rocek, Hannah Shaffer, Heidi Shaffer, and Marlene Devonshire, as the natural guardian of Meghan Devonshire (collectively, "Plaintiffs") and Delaware State Police Sergeant Mark DiJiacomo ("Sgt. DiJiacomo") (collectively, "the Parties") hereby provide the following Joint Status Report.

1. **Jurisdiction and Service**

The Parties have agreed that this Court has subject matter jurisdiction based on the federal claims asserted and pendant jurisdiction over the common law claims. Sergeant DiJiacomo is subject to the Court's personal jurisdiction, as are all Plaintiffs. The identity of Jane Doe is unknown, but Plaintiffs have alleged that she committed tortious actions against Delaware residents while in Delaware and that these tortious

actions within the forum led directly to the suit against her. Accordingly, the Parties anticipate that she also will be subject to the personal jurisdiction of the Court.

Sgt. DiJiacomo has been served. Because the Parties have not yet ascertained the identity of Jane Doe, she has not yet been served.

2. **Substance of the Action**

Plaintiffs' Allegations

On August 10, 2005, Plaintiffs planned to attend a book signing and discussion by Sen. Rick Santorum at the Barnes & Noble. Before the event commenced, Plaintiffs were threatened with arrest and ejected by Sgt. DiJiacomo, who was present as a guard for the event. Two of Plaintiffs, Plaintiffs Galperin and Rocek, were arrested by Sgt. DiJiacomo. No Barnes & Noble employee or agent instructed Plaintiffs to leave or directed Sgt. DiJiacomo to eject them.

In addition, Sgt. DiJiacomo was subsequently informed by another Plaintiff, Mrs. Shaffer, that Barnes & Noble had no objection to Plaintiffs returning to the store, but Sgt. DiJiacomo replied by threatening her with arrest and told her that Barnes & Noble had no authority to allow Plaintiffs to return to the store.

Plaintiffs allege that they were deprived of their rights to free speech, peaceable assembly, and petition for the redress of grievances under the First Amendment to the United States Constitution and under the Delaware Constitution. Plaintiffs further allege that Sgt. DiJiacomo conspired with defendant Jane Doe to so violate their rights. Plaintiffs Galperin and Rocek also allege that Sgt. DiJiacomo unlawfully arrested them, in violation of Delaware constitutional and common law and the Fourth Amendment to

the United States Constitution, and that Sgt. DiJiacomo conspired with defendant Jane Doe to this end.

Defendant DiJiacomo's Contentions

Barnes and Noble arranged through the Delaware State Police for an off-duty police officer to be assigned to the store for the purposes of the appearance of Senator Santorum to sign copies of a book. Sgt. DiJiacomo was the officer assigned to the bookstore. He contacted the bookstore manager, who advised him as to security issues and the arrangements for the book-signing by the Senator. Sgt. DiJiacomo also met with two female members of the Senator's staff to discuss security and arrangements. The members of the Senator's staff then met with the bookstore manager, who advised Sgt. DiJiacomo of changes in the arrangements and instructed him as to how members of the public would be able to have books signed. Both the members of the Senator's staff and the bookstore manager were concerned about the risk of disruptive behavior on the premises.

The bookstore manager asked Sgt. DiJiacomo to intervene after receiving complaints from customers and the members of the Senator's staff about the conduct of some of the plaintiffs. Sgt. DiJiacomo was able to engage in a dialogue with the plaintiffs, and to explain the rules for the book-signing that had been established by the bookstore manager and the Senator's staff.

At no time was anyone arrested, detained, or "ejected" from the bookstore. Various persons left voluntarily, and others agreed to participate within the rules established by the bookstore manager. At one point Sgt. DiJiacomo spoke to the father of one of the plaintiffs, in an effort to explain the rules imposed by Barnes and Noble in

conjunction with the Senator's staff representatives. Each of the plaintiffs eventually cooperated voluntarily with Sgt. DiJiacomo while protesting verbally that the constraints imposed by Barnes and Noble and the Senator were unfair.

At all times Sgt. DiJiacomo acted with restraint and served as an intermediary between the bookstore manager and the plaintiffs, effectively preventing the situation from getting out of hand. At all times Sgt. DiJiacomo respected the rights of the plaintiffs and took time to explain in detail the reasons for the actions of the Senator's staff and the bookstore, and the potential consequences facing anyone who would seek to disrupt the event or pose a threat to security.

3. **Identification of Factual and Legal Issues**

Whether Sgt. DiJiacomo acted at the direction of Barnes & Noble management and whether Plaintiffs were acting in a disruptive manner or threatening to disrupt the book-signing.

Whether Sgt. DiJiacomo ejected Plaintiffs from the book signing because of their political beliefs.

Whether Plaintiffs suffered a deprivation of their rights under the First Amendment to the U.S. Constitution and under the Delaware Constitution.

Whether Sgt. DiJiacomo arrested Plaintiffs Galperin and Rocek.

Whether Sgt. DiJiacomo had probable cause to arrest Plaintiffs Galperin and Rocek.

Whether Plaintiffs Galperin and Rocek suffered a deprivation of their rights under the Fourth Amendment to the U.S. Constitution and under the Delaware Constitution.

Whether Sgt. DiJiacomo conspired with others to deprive Plaintiffs' of their rights under the U.S. and Delaware Constitutions.

Whether Sgt. DiJiacomo acted with maliciousness or wanton, reckless disregard for Plaintiffs' constitutional rights.

Whether Sgt. DiJiacomo is entitled to either absolute or qualified immunity.

4. **Narrowing of Issues**

The Parties agree that prompt discovery is likely to narrow the issues and to assist them in identifying any issues that could be the subject of dispositive or partially dispositive motions.

5. **Relief**

Plaintiffs seek declaratory judgment; nominal, compensatory and punitive damages; attorneys' fees and costs; and such other relief as the Court deems just and proper. Plaintiffs have not calculated a specific sum of damages that they seek.

6. **Amendment of Pleadings** and

7. **Joinder of Parties**

The Parties anticipate that the Complaint will have to be amended once the identity of Jane Doe is determined. In addition, it is possible that Plaintiffs will seek to amend the Complaint to name other individuals with whom Sgt. DiJiacomo conferred with respect to his actions, to wit, the Barnes & Noble bookstore manager and unknown representatives of Senator Santorum.

8. **Discovery**

The Parties do not anticipate that discovery will be extensive or voluminous. The Parties contemplate limited document requests and interrogatories and approximately 10-

15 depositions, many of which may not require a full day to complete. The Parties have already engaged in an informal exchange of documents and anticipate that they will continue to be able to resolve most discovery issues efficiently and expeditiously. The focus of initial discovery will be on the identity of Jane Doe. Should this prove difficult to ascertain, additional discovery might be required and delays might be occasioned.

9. **Estimated Trial Length**

Although it will be some time before a precise estimate is possible, the Parties anticipate a trial of two to four days. It is too early to determine whether expedited trial methods will be necessary or appropriate. The Parties do not anticipate that bifurcation of the trial will be appropriate.

10. **Jury Trial**

Plaintiffs have demanded a jury trial.

11. **Settlement**

The Parties have preliminarily discussed settlement, but at the present are unable to reach any agreement, particularly because one defendant has not yet even been identified. The Parties are optimistic that after some discovery, settlement may be possible, but believe that alternative dispute resolution or mediation by a Magistrate will only be fruitful once discovery has proceeded further. Sgt. DiJiacomo believes that it would be pointless to discuss settlement without representatives of the Senator and the bookstore present to participate.

12. **Other Matters**

The Parties are optimistic that they will be able to cooperate to ensure the just, speedy and inexpensive determination of this action by proceeding on a reasonable trial

schedule and respectfully suggest a discovery period of approximately six months, followed by thirty days each for dispositive motions and the responses thereto, followed in turn by sufficient time for the Court to rule on such motions. The Parties anticipate that they will be prepared for trial in approximately one year. As noted above, the proposed schedule is predicated on the determination of Jane Doe's identity in the initial phases of discovery. If her identity proves particularly difficult to ascertain, the completion of discovery could be delayed, which could mean that a later trial date is required.

13. **Certification of Conference**

The undersigned counsel for the parties have conferred about each of the foregoing matters and are in agreement with the foregoing statements regarding them.

ROSENTHAL, MONHAIT, & GODDESS, P.A.

By _/s/ Norman M. Monhait_
Norman M. Monhait (Attorney ID No. 1040)
919 Market St., Suite 1401
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433
(302) 658-7567 - facsimile

HANGLEY ARONCHICK SEGAL & PUDLIN
Gordon A. Einhorn (Appearing Pro Hac Vice)
Paul W. Kaufman (Appearing Pro Hac Vice)
30 North Third Street, Suite 700
Harrisburg, PA 17101
(717) 364-1004
(717) 364-1020 – facsimile

*Of Counsel:*

AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA

Mary Catherine Roper (Pro Hac Vice Pending)
P.O. Box 40008
Philadelphia, PA 19106
(215) 592-1513 x. 116
(215) 592-1343 – facsimile

Witold Walczak
313 Atwood Street
Pittsburgh, PA 15213
(412) 681-7736
(412) 681-8707 – facsimile

Seth Kreimer
3400 Chestnut Street
Philadelphia, PA 19104
(215) 898-7447
(215) 573-2025 – facsimile

AMERICAN CIVIL LIBERTIES FOUNDATION OF DELAWARE

Julia Graff (Attorney ID No. 4708)
100 W. 10th Street, Suite 309
Wilmington, DE 19801
(302) 654-5326 x. 103
(302) 654-3689 – facsimile

*Attorneys for Plaintiffs*

                                    State of Delaware Department of Justice

                                    By /s/ Ralph K. Durstein III

                                    Ralph K. Durstein III, ID #912
                                    Deputy Attorney General
                                    Carvel State Office Building
                                    820 N. French St., 6th Floor
                                    Wilmington, DE 19801
                                    (302) 577-8510
                                    *Attorney for Defendant Delaware State Police*
                                    *Sergeant Mark DiJiacomo*