## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------x
STACEY GALPERIN, MIRIAM ROCEK,              :
HANNAH SHAFFER, HEIDI SHAFFER,              :
and MARLENE DEVONSHIRE, as the              :
Natural Guardian of MEGHAN DEVONSHIRE       :
                                            :
              Plaintiffs,                    :
                                            :   Civil Action No. 06-359 (GMS)
      v.                                     :
                                            :
DELAWARE STATE POLICE                       :
SERGEANT MARK DIJIACOMO, and                :   JURY TRIAL DEMANDED
JANE DOE,                                    :
                                            :
              Defendants.                    :
-----------------------------------------------------------x
```

### NOTICE OF TAKING DEPOSITION OF
### NEW YORK CLOSE PROTECTION SERVICES, INC.
### INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

TO:        Ralph K. Durstein III, Esquire
           Deputy Attorney General
           Carvel State Office Building
           820 N. French Street, 6th Floor
           Wilmington, Delaware 19801

**PLEASE TAKE NOTICE** that plaintiffs will take the deposition upon oral

examination of New York Close Protection Services, Inc. ("NYCPS") on October 24, 2006 at 10:00

a.m., at the offices of Hangley Aronchick Segal & Pudlin, 20 Brace Road, Suite 201, Cherry Hill,

New Jersey 08034, pursuant to the provisions of Rule 30(b)(6) of the Federal Rules of Civil

Procedure before an officer authorized by law to administer oaths. Testimony shall be recorded by

stenographic means.

A copy of the subpoena served on NYCPS that, among other things, designates the

areas of inquiry pursuant to Fed.R.Civ.P. 30(b)(6) is attached hereto.

The deposition shall continue from day to day until completed.  You are invited to attend and participate.

ROSENTHAL, MONHAIT& GODDESS, P.A.

By: _____

Norman M. Monhait (#1040)
919 Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, Delaware  19899-1070
(302) 656-4433
   Email: nmonhait@rmgglaw.com

HANGLEY ARONCHICK SEGAL& PUDLIN
Gordon A. Einhorn (Admitted *pro hac vice*)
Paul W. Kaufman (Admitted *pro hac vice*)
30 N. Third Street, Suite 700
Harrisburg, PA 17101
(717) 364-1004
   Attorneys for Plaintiffs

OF COUNSEL:

AMERICAN CIVIL LIBERTIES UNION
  OF PENNSYLVANIA
Mary Catherine Roper (Pro Hac Vice Pending)
P.O. Box 40008
Philadelphia, PA 19106

Witold Walczak
313 Atwood Street
Pittsburgh, PA 15213

Seith Kreiner
3400 Chestnut Street
Philadelphia, PA 19104

AMERICAN CIVIL LIBERTIES UNION
  OF DELAWARE
Julia Graff (#4708)
100 W. 10th Street, Suite 309
Wilmington, Delaware 19801

October 6, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of October, 2006, a copy of **Notice Of**

**Taking Deposition Of New York Close Protection Services, Inc. Pursuant To Federal Rule Of**

**Civil Procedure 30(b)(6)** was served, by electronic filing, upon:

> Ralph K. Durstein III, Esquire
> Deputy Attorney General
> Carvel State Office Building
> 820 N. French Street, 6th Floor
> Wilmington, Delaware 19801

Norman M. Monhait (#1040)

AO 88 (Delaware Rev. 7/00) Subpoena in a Civil Case

Issued by the

# United States District Court
## DISTRICT OF DELAWARE

| | |
|---|---|
| Stacy Galperin, et al | **SUBPOENA IN A CIVIL CASE** |
| *Plaintiff,* | |
| v. | **CASE NUMBER: 06-359 (GMS)** |
| Delaware State Police, et al., | |
| *Defendants.* | |

To:    **Corporate Designee**
**New York Close Protection Services, Inc.**
**101 West 87th St.**
**Suite 4M**
**New York, NY 10024**

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Hangley Aronchick Segal & Pudlin, 20 Brace Road, Suite 201, Cherry Hill, NJ 08034** | **October 24, 2006**<br>**10:00 a.m.** |

☐    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐    YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant) | Date |
|---|---|
| **Paul W. Kaufman, Attorney for Plaintiff** | **September 29, 2006** |

Issuing Officer's Name, Address, and Phone Number

**Paul W. Kaufman, Esquire**
**Hangley Aronchick Segal & Pudlin, One Logan Square, 27th Floor, Philadelphia, PA 19103-6933 (Phone: 215-496-7062)**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
              DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

## Rule 45, Federal Rules of Civil Procedure, Parts C & D

### (c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii)

of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, or

(iv) the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

### (d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

*Of Counsel:*

AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA

Mary Catherine Roper (Pro Hac Vice Pending)
P.O. Box 40008
Philadelphia, PA 19106
(215) 592-1513 x. 116
(215) 592-1343 – facsimile

Witold Walczak
313 Atwood Street
Pittsburgh, PA 15213
(412) 681-7736
(412) 681-8707 – facsimile

Seth Kreimer
3400 Chestnut Street
Philadelphia, PA 19104
(215) 898-7447
(215) 573-2025 – facsimile

AMERICAN CIVIL LIBERTIES FOUNDATION OF DELAWARE

Julia Graff (Attorney ID No. 4708)
100 W. 10th Street, Suite 309
Wilmington, DE 19801
(302) 654-5326 x. 103
(302) 654-3689 – facsimile

*Attorneys for Plaintiffs*

## GENERAL INSTRUCTIONS AND DEFINITIONS

1. In responding to these Discovery Requests, you are required to obtain and furnish all information available to you and any of your representatives, employees, agents, servants, or attorneys and to obtain and furnish all information that is in your control or in the possession or under the control of any of your representatives, employees, agents, servants, or attorneys.

2. "Plaintiffs" shall refer to Stacey Galperin, Miriam Rocek, Hannah Shaffer, Heidi Shaffer, Marlene Devonshire and Meghan Devonshire.

3. "Sgt. DiJiacomo" shall refer to Delaware State Police Sergeant Mark DiJiacomo.

4. "Senator Santorum" shall refer to United States Senator Rick Santorum.

5. "Senator Santorum's Staff" shall refer to Senator Santorum's present and former employees, consultants, representatives, agents and attorneys, including but not limited to members of his Senatorial and campaign staff.

6. "ISI" shall refer to the Intercollegiate Studies Institute, Inc., the publisher of *It Takes a Family* by Senator Santorum, and its present and former employees, consultants, representatives, agents and attorneys, including but not limited to any third parties with which it contracted to provide publicity, security or event organization services.

7. The "Store" shall refer to the Barnes & Noble book store at 4801 Concord Pike, Wilmington, Delaware 19803.

8. The "Store Staff" shall refer to present and former managers, employees, agents, representatives, attorneys and owners of the Store.

9.     "Barnes & Noble" shall mean Barnes & Noble, Inc., its parent, subsidiary and affiliated companies, and its and their present and former employees, consultants, representatives, agents and attorneys.

10.    The "Delaware State Police" shall refer to the Delaware State Police and the Division of State Police of the State of Delaware Department of Safety and Homeland Security and its present and former troopers, employees, consultants, representatives, agents and attorneys, including but not limited to Sgt. DiJiacomo.

11.    "New York Close Protection Services", "NYCPS" or "you" shall refer to New York Close Protection Services, Inc. and its present and former employees, consultants, representatives, agents and attorneys, including but not limited to Floyd Resnick, a/k/a Floyd Mesnick.

12.    The "Event" shall refer to Senator Santorum's book signing for his book *It Takes a Family* and/or discussion that occurred at the Store on August 10, 2005.

13.    The "Incident" shall refer to the ejection, removal or arrest of Plaintiffs from the Store prior to the beginning of the Event which is the basis for the Complaint in this case.

14.    The words "any" and "all" shall be construed as "any and all," and in the broadest sense to bring within the scope of the document requests and deposition topics all responses that might otherwise be construed to be outside of its scope.

15. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document requests and deposition topics all responses that might otherwise be construed to be outside of its scope.

16. The word "between" shall be construed as "between or among", and in the broadest sense to bring within the scope of the document requests and deposition topics all responses that might otherwise be construed to be outside of its scope. By way of illustration, a topic referring to all Communications between A, B and C shall include all Communications between A and B, B and C, A and C, or among A, B and C.

17.    The plural of any word shall include the singular and the singular shall include the plural.

18.    "Generate," "generated," or "generating," when used in reference to a document, shall mean drafting, writing, crafting, editing, modifying, copying, proofreading, reviewing, or otherwise creating or changing the text or other contents of that document.

19.    The terms "relating to" and "related to" shall be construed broadly and include but not be limited to concerning, evidencing, arising from, commenting on, responding to, showing, describing, regarding, analyzing, reflecting, supporting, mentioning or constituting.

20.    The term "regarding" shall be given the same construction as the term "relating to".

21.    "Person" or "persons" shall mean natural persons as well as firms, partnerships, associations, institutions, joint ventures, corporations, governmental entities, administrative agencies, professional associations, corporations, business entities, and every other organization of whatever sort.

22. The word "Investigation" shall be construed broadly and include but not be limited to any inquiries or research into, or examinations, inspections, reviews or analysis of a given event or subject matter, whether formal or informal.

23.    "Document" is used in the broadest possible sense and means, without limitation, any written, printed, typed, photostated, photographic, computerized, recorded or otherwise reproduced communication or representation, whether composed of letters, words, numbers, pictures, sounds, or symbols or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings. Without limiting the generality of the foregoing, the term "document" includes, but is not limited to, correspondence, e-mail, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements or work papers, accounts, analytical records, reports and summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes, computer and word processor disks, data cells, drums, print-outs, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing.

24.    "Communication" shall mean any written or verbal statement from one person or entity to another, whether conveyed orally, in writing, electronically, or by other means and whether received or not, including any such statements between officers, directors, employees or agents of the same entity.

25.    "Disciplinary Document" shall mean any formal or informal censure, reprimand, caution, admonition or other communication of disapproval.

26. If you decline to produce any document or part thereof based upon a claim

of privilege or any other claim of immunity from discovery, then you must provide a statement

setting forth, as to each such document:

(a) The name and job title of each author, writer, or sender of the document;

(b) The name and job title of each recipient, addressee, or other person to whom the original or any copy of the document was sent or furnished;

(c) The type of document (e.g. letter, memorandum, report, etc.);

(d) A description of the nature and subject matter of the document sufficient to permit Plaintiffs and the Court to determine whether it is privileged or otherwise immune from discovery;

(e) The basis for the claim of privilege or immunity from discovery; and

(f) The date of creation or transmittal of the document, or an estimate of that date, indicated as such, if no date appears on the document.

## SCHEDULE A

## 30(B)(6) TOPICS

1.  The planning and scheduling of the Event.

2.  The marketing and advertising of the Event.

3.  The format of the Event.

4.  The physical layout of the Store on August 10, 2005, including during the

Event.

5.  Coordination or communication preceding the Event and referring or

relating to the Event by NYCPS with any person, including Senator Santorum, Senator

Santorum's Staff, Barnes & Noble, Store Staff, the Delaware State Police or ISI.

6.  The arrangement of security for the event by NYCPS, ISI, Barnes & Noble,

Store Staff, Senator Santorum or Senator Santorum's Staff, including but not limited to the hiring

of a Delaware State Police officer as a guard for the Event and the retention of NYCPS to

provide security for the Event.

7.  The identity of NYCPS personnel present in the Store for the Event and in

the hours that preceded it, including but not limited to all employees, agents, servants, attorneys

or other representatives of NYCPS and any independent contractors hired by NYCPS.

8.  The identity of known persons other than customers present in the Store for

the Event, including but not limited to any person from Barnes & Noble, the Store Staff, ISI,

NYCPS or Senator Santorum's Staff.

9.  NYCPS's rules, regulations, policies or procedures, whether formal or

informal, regarding public events such as book signings or other appearances by public figures,

including but not limited to policies concerning ejection of members of the public from the sites of such events.

        10.    Communication between any of the following referring or relating to the Event or the Incident, whether before, during or after the Event:

        (a)    ISI;

        (b)    Barnes & Noble;

        (c)    Store Staff;

        (d)    DiJiacomo;

        (e)    Senator Santorum;

        (f)    Senator Santorum's Staff;

        (g)    NYCPS; and

        (h)    Members of the public.

        11.    Any and all actions taken by NYCPS referring or relating to the Incident, including but not limited to any Communication with ISI, Barnes & Noble, Store Staff, DiJiacomo, Senator Santorum, Senator Santorum's Staff or Plaintiffs with respect to Plaintiffs' behavior or to removing Plaintiffs from the Store.

        12.    Any statements made by NYCPS referring or relating to the Event or the Incident.

        13.    Any instances of events at which NYCPS was present, including but not limited to all events for which NYCPS coordinated, managed or provided security services of any kind, at which members of the public were ejected, arrested or otherwise removed for expression of their political beliefs, whether during a book signing or other appearance by a public figure or not.

14.     Other events at which NYCPS was present, including but not limited to all events for which NYCPS coordinated, managed or provided security services of any kind, at which Senator Santorum has appeared.

15.     Any Communication between Floyd Resnick, a/k/a Floyd Mesnick, and Sergeant DiJiacomo.

16.     Any Communication between Floyd Resnick, a/k/a Floyd Mesnick, and Barnes & Noble or Store Staff.

17.     Other events at which Floyd Resnick, a/k/a Floyd Mesnick, was present, including but not limited to all events for which NYCPS coordinated, managed or provided security services of any kind, at which members of the public were ejected, arrested or otherwise removed for expression of their political beliefs, whether during a book signing or other appearance by a public figure or not.

18.     Other events at which Floyd Resnick, a/k/a Floyd Mesnick, was present, including but not limited to all events for which NYCPS coordinated, managed or provided security services of any kind, at which Senator Santorum has appeared.