## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------x

STACEY GALPERIN, MIRIAM ROCEK,    :
HANNAH SHAFFER, HEIDI SHAFFER,    :
and MARLENE DEVONSHIRE, as the    :
Natural Guardian of MEGHAN DEVONSHIRE  :
    :
         Plaintiffs,    :
     v.    :  Civil Action No. 06-359 (GMS)
    :
DELAWARE STATE POLICE    :
SERGEANT MARK DIJIACOMO, and    :
JANE DOE,    :
    :
         Defendants.    :

------------------------------------------------------------------x

### NOTICE OF SERVICE OF SUBPOENAS

TO:      Ralph K. Durstein III, Esquire
             Deputy Attorney General
             Carvel State Office Building
             820 N. French Street, 6th Floor
             Wilmington, Delaware 19801

        **PLEASE TAKE NOTICE** that plaintiffs have caused subpoenas duces tecum, pursuant

to Fed.R.Civ.P. 45, to be served upon the individuals and entities designated below requiring production

of documents at the dates, places and times set forth below. A copy of each subpoena is attached as an

exhibit.

| Exhibit | Subpoenaed Party | Place, Date And Time |
|---------|------------------|----------------------|
| A | Amanda Winnington | Rosenthal Monhait & Goddess, P.A. 919 Market Street, Suite 1401 Wilmington, Delaware 19899 October 2, 2006 at 10:00 a.m. |
| B | Barnes & Noble, by a corporate designee | Rosenthal Monhait & Goddess, P.A. 919 Market Street, Suite 1401 |

| Exhibit | Subpoenaed Party | Place, Date And Time |
|---|---|---|
| C | Intercollegiate Studies Institute, Inc., by a corporate designee | Rosenthal Monhait & Goddess, P.A. 919 Market Street, Suite 1401 Wilmington, Delaware 19899 October 16, 2006 at 10:00 a.m. |
| D | New York Close Protection Services, Inc., by a corporate designee | Hangley Aronchick Segal & Pudlin 20 Brace Road, Suite 201 Cherry Hill, New Jersey 08034 October 16, 2006 at 10:00 a.m. |

**ROSENTHAL, MONHAIT& GODDESS, P.A.**

By: _Norman M Monhait_ _____

Norman M. Monhait (#1040)
919 Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, DE  19899-1070
(302) 656-4433
  Email: nmonhait@rmgglaw.com

HANGLEY ARONCHICK SEGAL& PUDLIN
Gordon A. Einhorn (Admitted *pro hac vice*)
Paul W. Kaufman (Admitted *pro hac vice*)
30 N. Third Street, Suite 700
Harrisburg, PA 17101
(717) 364-1004
  Attorneys for Plaintiffs

OF COUNSEL:

AMERICAN CIVIL LIBERTIES UNION
   OF PENNSYLVANIA
Mary Catherine Roper (Pro Hac Vice Pending)
P.O. Box 40008
Philadelphia, PA 19106

Witold Walczak
313 Atwood Street
Pittsburgh, PA 15213

Seith Kreiner
3400 Chestnut Street
Philadelphia, PA 19104

AMERICAN CIVIL LIBERTIES UNION
   OF DELAWARE
Julia Graff (#4708)
100 W. 10th Street, Suite 309
Wilmington, Delaware 19801

October 6, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of October, 2006, a copy of **Notice Of**

**Service Of Subpoenas** was served, by electronic filing, upon:

Ralph K. Durstein III, Esquire
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, Delaware 19801

Norman M. Monhait (#1040)

# EXHIBIT A

AO 88 (Delaware Rev. 7/00) Subpoena in a Civil Case

Issued by the

# United States District Court
## DISTRICT OF DELAWARE

Stacy Galperin, et al

*Plaintiff,*

v.

Delaware State Police, et al.,

*Defendants.*

**SUBPOENA IN A CIVIL CASE**

**CASE NUMBER:  06-359 (GMS)**

To:      **Amanda Winnington**
         **Community Relations Manager**
         **Barnes & Noble**
         **Concord Mall**
         **4801 Concord Pike**
         **Wilmington, DE 19803**

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See attached Schedule A.**

| PLACE | DATE AND TIME |
|---|---|
| Rosenthal, Monhait & Goddess, P.A., 919 Market St., Suite 1401, P.O. Box 1070, Wilmington, DE 19899 | **October 2, 2006** **10:00 a.m.** |

☐   YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant) | Date |
|---|---|
| Paul W. Kaufman, Attorney for Plaintiff | September 14, 2006 |

Issuing Officer's Name, Address, and Phone Number

**Paul W. Kaufman, Esquire**
**Hangley Aronchick Segal & Pudlin, One Logan Square, 27th Floor, Philadelphia, PA 19103-6933 (Phone:  215-496-7062)**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SERVED | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
          DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Parts C& D

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii)

of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, or

(iv) the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

### GENERAL INSTRUCTIONS AND DEFINITIONS

1.  In responding to these Discovery Requests, you are required to obtain and furnish all information available to you and any of your representatives, employees, agents, servants, or attorneys and to obtain and furnish all information that is in your control or in the possession or under the control of any of your representatives, employees, agents, servants, or attorneys.

2.  "Plaintiffs" shall refer to Stacey Galperin, Miriam Rocek, Hannah Shaffer, Heidi Shaffer, Marlene Devonshire and Meghan Devonshire.

3.  "Sgt. DiJiacomo" shall refer to Delaware State Police Sergeant Mark DiJiacomo.

4.  "Senator Santorum" shall refer to United States Senator Rick Santorum.

5.  "Senator Santorum's Staff" shall refer to Senator Santorum's present and former employees, consultants, representatives, agents and attorneys, including but not limited to you and members of his Senatorial and campaign staff.

6.  The "Store" shall refer to the Barnes & Noble book store at 4801 Concord Pike, Wilmington, Delaware 19803.

7.  The "Store Staff" shall refer to present and former managers, employees, agents, representatives, attorneys and owners of the Store, including but not limited to you.

8.  "Barnes & Noble" shall mean Barnes & Noble, Inc., its parent, subsidiary and affiliated companies, and its and their present and former employees, consultants, representatives, agents and attorneys.

9.  The "Delaware State Police" shall refer to the Delaware State Police and the Division of State Police of the State of Delaware Department of Safety and Homeland

Security and its present and former troopers, employees, consultants, representatives, agents and attorneys, including but not limited to Sgt. DiJiacomo.

　　　　　10.　　"New York Close Protection Services" shall refer to New York Close Protection Services and its present and former employees, consultants, representatives, agents and attorneys, including but not limited to Floyd Resnick, a/k/a Floyd Mesnick.

　　　　　11. The "Event" shall refer to Senator Santorum's book signing for his book *It Takes a Family* and/or discussion that occurred at the Store on August 10, 2005.

　　　　　12. The "Incident" shall refer to the ejection, removal or arrest of Plaintiffs from the Store prior to the beginning of the Event which is the basis for the Complaint in this case.

　　　　　13. The words "any" and "all" shall be construed as "any and all," and in the broadest sense to bring within the scope of the document requests all responses that might otherwise be construed to be outside of its scope.

　　　　　14. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document requests all responses that might otherwise be construed to be outside of its scope.

　　　　　15. The plural of any word shall include the singular and the singular shall include the plural.

　　　　　16. "Generate," "generated," or "generating," when used in reference to a document, shall mean drafting, writing, crafting, editing, modifying, copying, proofreading, reviewing, or otherwise creating or changing the text or other contents of that document.

　　　　　17. The terms "relating to" and "related to" shall be construed broadly and include but not be limited to concerning, evidencing, arising from, commenting on, responding to, showing, describing, regarding, analyzing, reflecting, supporting, mentioning or constituting.

2

18. The term "regarding" shall be given the same construction as the term "relating to".

19. "Person" or "persons" shall mean natural persons as well as firms, partnerships, associations, institutions, joint ventures, corporations, governmental entities, administrative agencies, professional associations, corporations, business entities, and every other organization of whatever sort.

20. "Document" is used in the broadest possible sense and means, without limitation, any written, printed, typed, photostated, photographic, computerized, recorded or otherwise reproduced communication or representation, whether composed of letters, words, numbers, pictures, sounds, or symbols or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings. Without limiting the generality of the foregoing, the term "document" includes, but is not limited to, correspondence, e-mail, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements or work papers, accounts, analytical records, reports and summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes, computer and word processor disks, data cells, drums, print-outs, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing.

3

21. "Communication" shall mean any written or verbal statement from one person or entity to another, whether conveyed orally, in writing, electronically, or by other means and whether received or not, including any such statements between officers, directors, employees or agents of the same entity.

22. If you decline to produce any document or part thereof based upon a claim of privilege or any other claim of immunity from discovery, then you must provide a statement setting forth, as to each such document:

      (a)    The name and job title of each author, writer, or sender of the document;

      (b)    The name and job title of each recipient, addressee, or other person to whom the original or any copy of the document was sent or furnished;

      (c)    The type of document (e.g. letter, memorandum, report, etc.);

      (d)    A description of the nature and subject matter of the document sufficient to permit Plaintiffs and the Court to determine whether it is privileged or otherwise immune from discovery;

      (e)    The basis for the claim of privilege or immunity from discovery; and

      (f)    The date of creation or transmittal of the document, or an estimate of that date, indicated as such, if no date appears on the document.

4

## DOCUMENT REQUESTS

1.    All documents, whenever and by whomever generated, referring or

relating to the Event, including but not limited to:

      (a)    All publicity materials for the Event, including but not limited to event advertisements, webpages, emails, flyers and posters, whether distributed or posted physically or electronically;

      (b)    All memoranda or summaries referring or relating to the Event, prepared either by you, Barnes & Noble, Store Staff or by third parties;

      (c)    All documents, including but not limited to Communications, referring or relating to scheduling the Event;

      (d)    All documents, including but not limited to Communications, referring or relating to the format of the Event;

      (e)    All documents, including but not limited to Communications, referring or relating to security for the Event; and

      (f)    All statements, press releases, or talking points referring or relating to the Event, whether generated before the Event or afterward.

2.    All documents, whenever and by whomever generated, referring or

relating to the Incident, including but not limited to:

      (a)    All memoranda or summaries of the Incident, either by you, Barnes & Noble, Store Staff or by third parties;

      (b)    All Communications by Barnes & Noble or Store Staff, including you, regarding the Incident, including any formal or informal internal memoranda or Communications regarding the Incident;

      (c)    All notes taken during conversations with Store Staff or others present during the Incident; and

      (d)    All statements, press releases, or talking points referring or relating to the Incident.

3.    All documents, including but not limited to Communications, referring or

relating to any Plaintiff.

5

4. All documents, including but not limited to Communications, referring or relating to Sgt. DiJiacomo.

5. All documents identifying any members of the Delaware State Police, Senator Santorum's Staff, Store Staff, or New York Close Protective Services present during the Event and/or the Incident.

6. All documents that constitute, refer or relate to Communications between you and Barnes & Noble or the Store Staff referring to or regarding the Event or the Incident, including but not limited to Communications between you and Mary Ellen Keating, Mary Ausman or Matthew Corones.

7. All documents that constitute, refer or relate to statements you made referring or regarding to the Event or the Incident.

8. All documents that constitute, refer or relate to Barnes & Noble's rules, regulations, policies or procedures, whether formal or informal, referring to or regarding ejection of members of the public from stores, including but not limited to those governing book signings or other appearances by public figures.

9. All documents that constitute, refer or relate to the Store's rules, regulations, policies or procedures, whether formal or informal, referring to or regarding ejection of members of the public from stores, including but not limited to those governing book signings or other appearances by public figures.

10. Any personal journals, diaries, blogs or notes, whether public or personal, that constitute, refer or relate to the Event or the Incident.

6

11.    Any Communications with non-parties referring or relating to the Event or the Incident, whether generated and sent by you or by others, including but not limited to emails, letters or notes, whether personal or professional.

# EXHIBIT B

AO 88 (Delaware Rev. 7/00) Subpoena in a Civil Case

Issued by the

# United States District Court
### DISTRICT OF DELAWARE

Stacy Galperin, et al

**SUBPOENA IN A CIVIL CASE**

*Plaintiff,*

v.

**CASE NUMBER: 06-359 (GMS)**

**Delaware State Police, et al.,**

*Defendants.*

To:      **Corporate Designee**
         **Barnes & Noble**
         **Concord Mall**
         **4801 Concord Pike**
         **Wilmington, DE 19803**

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See attached Schedule A.**

| PLACE | DATE AND TIME |
|---|---|
| Rosenthal, Monhait & Goddess, P.A., 919 Market St., Suite 1401, P.O. Box 1070, Wilmington, DE 19899 | **October 6, 2006**<br>**10:00 a.m.** |

☐  YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant) | Date |
|---|---|
| **Paul W. Kaufman, Attorney for Plaintiff** | September 14, 2006 |

Issuing Officer's Name, Address, and Phone Number

**Paul W. Kaufman, Esquire**
**Hangley Aronchick Segal & Pudlin, One Logan Square, 27th Floor, Philadelphia, PA 19103-6933 (Phone: 215-496-7062)**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
           DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Parts C& D

### (c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii)

of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, or

(iv) the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

### (d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## GENERAL INSTRUCTIONS AND DEFINITIONS

1.      In responding to these Discovery Requests, you are required to obtain and furnish all information available to you and any of your representatives, employees, agents, servants, or attorneys and to obtain and furnish all information that is in your control or in the possession or under the control of any of your representatives, employees, agents, servants, or attorneys.

2.      "Plaintiffs" shall refer to Stacey Galperin, Miriam Rocek, Hannah Shaffer, Heidi Shaffer, Marlene Devonshire and Meghan Devonshire.

3.      "Sgt. DiJiacomo" shall refer to Delaware State Police Sergeant Mark DiJiacomo.

4.       "Senator Santorum" shall refer to United States Senator Rick Santorum.

5.      "Senator Santorum's Staff" shall refer to Senator Santorum's present and former employees, consultants, representatives, agents and attorneys, including but not limited to members of his Senatorial and campaign staff.

6.      "ISI" shall refer to the publisher of *It Takes a Family* by Senator Santorum, Intercollegiate Studies Institute, and its present and former employees, consultants, representatives, agents and attorneys, including but not limited to any third parties with which it contracted to provide publicity or event organization services.

7.      The "Store" shall refer to the Barnes & Noble book store at 4801 Concord Pike, Wilmington, Delaware 19803.

8.      The "Store Staff" shall refer to present and former managers, employees, agents, representatives, attorneys and owners of the Store.

9.      "Barnes & Noble" shall mean Barnes & Noble, Inc., its parent, subsidiary and affiliated companies, and its and their present and former employees, consultants, representatives, agents and attorneys.

10.     The "Delaware State Police" shall refer to the Delaware State Police and the Division of State Police of the State of Delaware Department of Safety and Homeland Security and its present and former troopers, employees, consultants, representatives, agents and attorneys, including but not limited to Sgt. DiJiacomo.

11.     "New York Close Protection Services" shall refer to New York Close Protection Services and its present and former employees, consultants, representatives, agents and attorneys, including but not limited to Floyd Resnick, a/k/a Floyd Mesnick.

12.     The "Event" shall refer to Senator Santorum's book signing for his book *It Takes a Family* and/or discussion that occurred at the Store on August 10, 2005.

13.     The "Incident" shall refer to the ejection, removal or arrest of Plaintiffs from the Store prior to the beginning of the Event which is the basis for the Complaint in this case.

14.     The words "any" and "all" shall be construed as "any and all," and in the broadest sense to bring within the scope of the document requests and deposition topics all responses that might otherwise be construed to be outside of its scope.

15. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document requests and deposition topics all responses that might otherwise be construed to be outside of its scope.

16. The word "between" shall be construed as "between or among", and in the broadest sense to bring within the scope of the document requests and deposition topics all

responses that might otherwise be construed to be outside of its scope. By way of illustration, a topic referring to all Communications between A, B and C shall include all Communications between A and B, B and C, A and C, or among A, B and C.

17.    The plural of any word shall include the singular and the singular shall include the plural.

18.    "Generate," "generated," or "generating," when used in reference to a document, shall mean drafting, writing, crafting, editing, modifying, copying, proofreading, reviewing, or otherwise creating or changing the text or other contents of that document.

19.    The terms "relating to" and "related to" shall be construed broadly and include but not be limited to concerning, evidencing, arising from, commenting on, responding to, showing, describing, regarding, analyzing, reflecting, supporting, mentioning or constituting.

20.    The term "regarding" shall be given the same construction as the term "relating to".

21.    "Person" or "persons" shall mean natural persons as well as firms, partnerships, associations, institutions, joint ventures, corporations, governmental entities, administrative agencies, professional associations, corporations, business entities, and every other organization of whatever sort.

22. The word "Investigation" shall be construed broadly and include but not be limited to any inquiries or research into, or examinations, inspections, reviews or analysis of a given event or subject matter, whether formal or informal.

23.    "Document" is used in the broadest possible sense and means, without limitation, any written, printed, typed, photostated, photographic, computerized, recorded or otherwise reproduced communication or representation, whether composed of letters, words,

numbers, pictures, sounds, or symbols or any combination thereof. This definition includes

copies or duplicates of documents contemporaneously or subsequently created that have any

non-conforming notes or other markings. Without limiting the generality of the foregoing, the

term "document" includes, but is not limited to, correspondence, e-mail, memoranda, notes,

records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements,

working papers, summaries, statistical statements, financial statements or work papers, accounts,

analytical records, reports and summaries of investigations, trade letters, press releases,

comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures,

pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of

meetings, or other communications of any type, including inter- and intra-office

communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes,

computer and word processor disks, data cells, drums, print-outs, all other data compilations

from which information can be obtained (translated, if necessary, into usable form), and any

preliminary versions, drafts or revisions of any of the foregoing.

     24. "Communication" shall mean any written or verbal statement from one

person or entity to another, whether conveyed orally, in writing, electronically, or by other means

and whether received or not, including any such statements between officers, directors,

employees or agents of the same entity.

     25. If you decline to produce any document or part thereof based upon a claim

of privilege or any other claim of immunity from discovery, then you must provide a statement

setting forth, as to each such document:

         (a) The name and job title of each author, writer, or sender of the
             document;

(b)     The name and job title of each recipient, addressee, or other person to whom the original or any copy of the document was sent or furnished;

(c)     The type of document (e.g. letter, memorandum, report, etc.);

(d)     A description of the nature and subject matter of the document sufficient to permit Plaintiffs and the Court to determine whether it is privileged or otherwise immune from discovery;

(e)     The basis for the claim of privilege or immunity from discovery; and

(f)     The date of creation or transmittal of the document, or an estimate of that date, indicated as such, if no date appears on the document.

## SCHEDULE A

## DOCUMENT REQUESTS

     1.    All documents, including but not limited to Communications, referring or

relating to the deposition topics in Schedule A to the Subpoena noticing a deposition pursuant to

Fed. R. Civ. P. 30(b)(6).

     2.    All documents, whenever and by whomever generated, referring or relating

to the Event, including but not limited to:

     (a)    All publicity materials for the Event, including but not limited to
event advertisements, web pages, emails, flyers and posters,
whether distributed or posted physically or electronically;

     (b)    All memoranda or summaries of the Event, either by Barnes &
Noble, Store Staff or by third parties;

     (c)    All documents, including but not limited to Communications,
referring or relating to the scheduling of the Event;

     (d)    All documents, including but not limited to Communications,
referring or relating to the format of the Event; and

     (e)    All statements, press releases, or talking points referring or relating
to the Event, whether generated before the Event or afterward.

     3.    All documents, whenever and by whomever generated, referring or relating

to the Incident, including but not limited to:

     (a)    All formal and informal memoranda or summaries of the Incident,
either by Barnes & Noble, Store Staff or by third parties;

     (b)    All Communications by Barnes & Noble or Store Staff regarding
the Incident, including any formal or informal internal memoranda
or Communications regarding the Incident;

     (c)    All notes taken during conversations with Store Staff or others
present during the Incident;

     (d)    All statements, press releases, or talking points referring or relating
to the Incident; and

(e)     All documents in any way referring or referring or relating to any Investigation of the Incident by Barnes & Noble, Store Staff, the Delaware State Police or other persons.

4.     All documents referring or related to security at the Event or the Incident, including but not limited to any contracts or Communications between Barnes & Noble or the Store and any security personnel, including but not limited to Sgt. DiJiacomo or the Delaware State Police.

5.     Documents sufficient to identify any members of the Store Staff who were present at the Event or who were at the Store in the hours preceding it.

6.     All documents, including but not limited to Communications, referring or relating to any Plaintiff.

7.     All documents, including but not limited to Communications, referring or relating to Sgt. DiJiacomo.

8.     All documents that constitute, refer, or relate to statements by Mary Ellen Keating referring or relating to the Event or the Incident.

9.     All documents that constitute, refer, or relate to statements by Amanda Winnington referring or relating to the Event or the Incident.

10.     All documents that constitute, refer, or relate to statements by any Barnes & Nobel officer, employee, or representative referring or relating to the Event or the Incident.

11.     All documents that constitute, refer or relate to additional statements by Barnes & Noble employees or Store Staff referring or relating to the Event or the Incident, including but not limited to those using similar or identical language to those of Mary Ausman and Matthew Corones.

12.     All documents that constitute, refer or relate to Barnes & Noble's rules, regulations, policies or procedures, whether formal or informal, regarding ejection of members

of the public from stores, including but not limited to those governing book signings or other appearances by public figures.

13.    All documents that constitute, refer or relate to the Store's rules, regulations, policies or procedures, whether formal or informal, regarding ejection of members of the public from stores, including but not limited to those governing book signings or other appearances by public figures.

14.    All documents that constitute, refer or relate to Barnes & Noble's rules, regulations, policies or procedures, whether formal or informal, regarding the retention or destruction of documents, including but not limited to electronic documents and the documents requested in the foregoing requests.

# EXHIBIT C

AO 88 (Delaware Rev. 7/00) Subpoena in a Civil Case

Issued by the

# United States District Court
## DISTRICT OF DELAWARE

Stacy Galperin, et al

*Plaintiff,*

v.

Delaware State Police Sergeant Mark DiJiacomo, et al.,

*Defendants.*

**SUBPOENA IN A CIVIL CASE**

**CASE NUMBER:  06-359 (GMS)**

To:      **Corporate Designee**
         **Intercollegiate Studies Institute, Inc.**
         **c/o Elaine Pinder, Registered Agent**
         **2709 Bodine Drive**
         **Wilmington, DE 19810**

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above
     case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place,
     date, and time specified below (list documents or objects):  **See attached Schedule A.**

| PLACE | DATE AND TIME |
|---|---|
| Rosenthal, Monhait & Goddess, P.A., 919 Market St., Suite 1401, P.O. Box 1070, Wilmington, DE 19899 | **October 16, 2006** **10:00 a.m.** |

☐   YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

     Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or
managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the
person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant) | Date |
|---|---|
| **Paul W. Kaufman, Attorney for Plaintiff** | **September 29, 2006** |

Issuing Officer's Name, Address, and Phone Number

**Paul W. Kaufman, Esquire**
**Hangley Aronchick Segal & Pudlin, One Logan Square, 27th Floor, Philadelphia, PA 19103-6933 (Phone:  215-496-7062)**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE *10 - 4 -06* | PLACE *2709  Bodine Dr* |
|---|---|---|
| SERVED | | *Wilmington, DE 1980* |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| *Michael Pixler* | *hand delivery* |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| *Patrick Boylan* | *driver* |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the
Proof of Service is true and correct.

Executed on *10 - 4 -06*
                DATE

SIGNATURE OF SERVER

*800 N  King St.*
ADDRESS OF SERVER
*Wilmington, DE 1980/*

## Rule 45, Federal Rules of Civil Procedure, Parts C& D

### (c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and
service of a subpoena shall take reasonable steps to avoid imposing
undue burden or expense on a person subject to that subpoena. The
court on behalf of which the subpoena was issued shall enforce this
duty and impose upon the party or attorney in breach of this duty an
appropriate sanction which may include, but is not limited to, lost
earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit
inspection and copying of designated books, papers, documents or
tangible things or inspection of premises need not appear in person at
the place of production or inspection unless commanded to appear for
deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person
commanded to produce and permit inspection and copying may,
within 14 days after service of the subpoena or before the time
specified for compliance if such time is less than 14 days after
service, serve upon the party or attorney designated in the subpoena
written objection to inspection or copying of any or all of the
designated materials or of the premises. If objection is made, the
party serving the subpoena shall not be entitled to inspect and copy
the materials or inspect the premises except pursuant to an order of
the court by which the subpoena was issued. If objection is made, the
party serving the subpoena may, upon notice to the person
commanded to produce, move at any time for an order to compel the
production. Such an order to compel production shall protect any
person who is not a party or an officer of a party from significant
expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena
was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a
party to travel to a place more than 100 miles from the place where
that person resides, is employed or regularly transacts business in
person, except that, subject to the provisions of clause (c)(3)(B)(iii)

of this rule, such a person may in order to attend trial be commanded
to travel from any such place within the state in which the trial is
held, or

(iii) requires disclosure of privileged or other protected
matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential
research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or
information not describing specific events or occurrences in dispute
and resulting from the expert's study made not at the request of any
party, or

(iii) requires a person who is not a party or an officer of a
party to incur substantial expense to travel more than 100 miles to
attend trial, or

(iv) the court may, to protect a person subject to or affected
by the subpoena, quash or modify the subpoena or, if the party in
whose behalf the subpoena is issued shows a substantial need for the
testimony or material that cannot be otherwise met without undue
hardship and assures that the person to whom the subpoena is
addressed will be reasonably compensated, the court may order
appearance or production only upon specified conditions.

### (d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce
documents shall produce them as they are kept in the usual course of
business or shall organize and label them to correspond with the
categories in the demand.

(2) When information subject to a subpoena is withheld on
a claim that it is privileged or subject to protection as trial preparation
materials, the claim shall be made expressly and shall be supported
by a description of the nature of the documents, communications, or
things not produced that is sufficient to enable the demanding party
to contest the claim.

## GENERAL INSTRUCTIONS AND DEFINITIONS

1.      In responding to these Discovery Requests, you are required to obtain and furnish all information available to you and any of your representatives, employees, agents, servants, or attorneys and to obtain and furnish all information that is in your control or in the possession or under the control of any of your representatives, employees, agents, servants, or attorneys.

2.      "Plaintiffs" shall refer to Stacey Galperin, Miriam Rocek, Hannah Shaffer, Heidi Shaffer, Marlene Devonshire and Meghan Devonshire.

3.      "Sgt. DiJiacomo" shall refer to Delaware State Police Sergeant Mark DiJiacomo.

4.      "Senator Santorum" shall refer to United States Senator Rick Santorum.

5.      "Senator Santorum's Staff" shall refer to Senator Santorum's present and former employees, consultants, representatives, agents and attorneys, including but not limited to members of his Senatorial and campaign staff.

6.      "ISI" or "you" shall refer to the Intercollegiate Studies Institute, Inc., the publisher of *It Takes a Family* by Senator Santorum, and its present and former employees, consultants, representatives, agents and attorneys, including but not limited to any third parties with which it contracted to provide publicity, security or event organization services.

7.      The "Store" shall refer to the Barnes & Noble book store at 4801 Concord Pike, Wilmington, Delaware 19803.

8.      The "Store Staff" shall refer to present and former managers, employees, agents, representatives, attorneys and owners of the Store.

9.     "Barnes & Noble" shall mean Barnes & Noble, Inc., its parent, subsidiary and affiliated companies, and its and their present and former employees, consultants, representatives, agents and attorneys.

10.    The "Delaware State Police" shall refer to the Delaware State Police and the Division of State Police of the State of Delaware Department of Safety and Homeland Security and its present and former troopers, employees, consultants, representatives, agents and attorneys, including but not limited to Sgt. DiJiacomo.

11.    "New York Close Protection Services" shall refer to New York Close Protection Services and its present and former employees, consultants, representatives, agents and attorneys, including but not limited to Floyd Resnick, a/k/a Floyd Mesnick.

12.    The "Event" shall refer to Senator Santorum's book signing for his book *It Takes a Family* and/or discussion that occurred at the Store on August 10, 2005.

13.    The "Incident" shall refer to the ejection, removal or arrest of Plaintiffs from the Store prior to the beginning of the Event which is the basis for the Complaint in this case.

14.    The words "any" and "all" shall be construed as "any and all," and in the broadest sense to bring within the scope of the document requests and deposition topics all responses that might otherwise be construed to be outside of its scope.

15. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document requests and deposition topics all responses that might otherwise be construed to be outside of its scope.

16. The word "between" shall be construed as "between or among", and in the broadest sense to bring within the scope of the document requests and deposition topics all

responses that might otherwise be construed to be outside of its scope. By way of illustration, a topic referring to all Communications between A, B and C shall include all Communications between A and B, B and C, A and C, or among A, B and C.

17.    The plural of any word shall include the singular and the singular shall include the plural.

18.    "Generate," "generated," or "generating," when used in reference to a document, shall mean drafting, writing, crafting, editing, modifying, copying, proofreading, reviewing, or otherwise creating or changing the text or other contents of that document.

19.    The terms "relating to" and "related to" shall be construed broadly and include but not be limited to concerning, evidencing, arising from, commenting on, responding to, showing, describing, regarding, analyzing, reflecting, supporting, mentioning or constituting.

20.    The term "regarding" shall be given the same construction as the term "relating to".

21.    "Person" or "persons" shall mean natural persons as well as firms, partnerships, associations, institutions, joint ventures, corporations, governmental entities, administrative agencies, professional associations, corporations, business entities, and every other organization of whatever sort.

22. The word "Investigation" shall be construed broadly and include but not be limited to any inquiries or research into, or examinations, inspections, reviews or analysis of a given event or subject matter, whether formal or informal.

23.    "Document" is used in the broadest possible sense and means, without limitation, any written, printed, typed, photostated, photographic, computerized, recorded or otherwise reproduced communication or representation, whether composed of letters, words,

numbers, pictures, sounds, or symbols or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings. Without limiting the generality of the foregoing, the term "document" includes, but is not limited to, correspondence, e-mail, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements or work papers, accounts, analytical records, reports and summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes, computer and word processor disks, data cells, drums, print-outs, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing.

24.    "Communication" shall mean any written or verbal statement from one person or entity to another, whether conveyed orally, in writing, electronically, or by other means and whether received or not, including any such statements between officers, directors, employees or agents of the same entity.

25.    If you decline to produce any document or part thereof based upon a claim of privilege or any other claim of immunity from discovery, then you must provide a statement setting forth, as to each such document:

> (a)    The name and job title of each author, writer, or sender of the document;

(b)     The name and job title of each recipient, addressee, or other person
        to whom the original or any copy of the document was sent or
        furnished;

(c)     The type of document (e.g. letter, memorandum, report, etc.);

(d)     A description of the nature and subject matter of the document
        sufficient to permit Plaintiffs and the Court to determine whether it
        is privileged or otherwise immune from discovery;

(e)     The basis for the claim of privilege or immunity from discovery;
        and

(f)     The date of creation or transmittal of the document, or an estimate
        of that date, indicated as such, if no date appears on the document.

## SCHEDULE A

### DOCUMENT REQUESTS

1.      All documents, including but not limited to Communications, referring or

relating to the deposition topics in Schedule A to the Subpoena noticing a deposition pursuant to

Fed. R. Civ. P. 30(b)(6).

2.      All documents, whenever and by whomever generated, referring or relating

to the Event, including but not limited to:

 (a)    All publicity materials for the Event, including but not limited to
        event advertisements, web pages, emails, flyers and posters,
        whether distributed or posted physically or electronically;

 (b)    All memoranda or summaries of the Event, either by ISI or by any
        other person;

 (c)    All documents, including but not limited to Communications,
        referring or relating to the scheduling of the Event;

 (d)    All documents, including but not limited to Communications,
        referring or relating to the format of the Event; and

 (e)    All statements, press releases, or talking points referring or relating
        to the Event, whether generated before the Event or afterward.

3.      All documents, whenever and by whomever generated, referring or relating

to the Incident, including but not limited to:

 (a)    All formal and informal memoranda or summaries of the Incident,
        either by ISI or by any other person;

 (b)    All Communications by ISI regarding the Incident, including any
        formal or informal internal memoranda or Communications
        regarding the Incident;

 (c)    All notes taken during conversations with ISI or others present
        during the Incident;

 (d)    All statements, press releases, or talking points referring or relating
        to the Incident; and

         (e)     All documents in any way referring or referring or relating to any Investigation of the Incident by ISI, Barnes & Noble, Store Staff, the Delaware State Police or other persons.

    4.     All documents referring or related to security at the Event or the Incident, including but not limited to any contracts or Communications between ISI and any security personnel, including but not limited to Sgt. DiJiacomo, the Delaware State Police or New York Close Protection Services.

    5.     Documents sufficient to identify any employees, agents, servants, attorneys or other representatives of ISI or any independent contractors hired by ISI who were present at the Event or who were at the Store in the hours preceding it.

    6.     All documents, including but not limited to Communications, referring or relating to any Plaintiff.

    7.     All documents, including but not limited to Communications, referring or relating to Sgt. DiJiacomo.

    8.     All documents that constitute, refer, or relate to statements by any ISI officer, employee, or representative referring or relating to the Event or the Incident.

    9.     All documents that constitute, refer or relate to ISI's rules, regulations, policies or procedures, whether formal or informal, regarding ejection of members of the public from events, including but not limited to those governing book signings or other appearances by public figures.

    10.    All documents that constitute, refer or relate to ISI's rules, regulations, policies or procedures, whether formal or informal, regarding the retention or destruction of documents, including but not limited to electronic documents and the documents requested in the foregoing requests.

# EXHIBIT D

AO 88 (Delaware Rev. 7/00) Subpoena in a Civil Case

Issued by the

# United States District Court
### DISTRICT OF DELAWARE

Stacy Galperin, et al

*Plaintiff,*

v.

Delaware State Police Sergeant Mark DiJiacomo, et al.,

*Defendants.*

**SUBPOENA IN A CIVIL CASE**

**CASE NUMBER:  06-359 (GMS)**

To:    **Corporate Designee**
       **New York Close Protection Services, Inc.**
       **101 West 87th St.**
       **Suite 4M**
       **New York, NY 10024**

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above
       case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place,
       date, and time specified below (list documents or objects):  **See attached Schedule A.**

| PLACE | DATE AND TIME |
|---|---|
| **Hangley Aronchick Segal & Pudlin, 20 Brace Road, Suite 201, Cherry Hill, NJ 08034** | **October 16, 2006** **10:00 a.m.** |

☐    YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

       Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or
managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the
person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant) | Date |
|---|---|
| **Paul W. Kaufman, Attorney for Plaintiff** | **September 29, 2006** |

Issuing Officer's Name, Address, and Phone Number

**Paul W. Kaufman, Esquire**
**Hangley Aronchick Segal & Pudlin, One Logan Square, 27th Floor, Philadelphia, PA 19103-6933 (Phone:  215-496-7062)**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Parts C& D

### (c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii)

of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, or

(iv) the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

### (d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## GENERAL INSTRUCTIONS AND DEFINITIONS

1.    In responding to these Discovery Requests, you are required to obtain and furnish all information available to you and any of your representatives, employees, agents, servants, or attorneys and to obtain and furnish all information that is in your control or in the possession or under the control of any of your representatives, employees, agents, servants, or attorneys.

2.    "Plaintiffs" shall refer to Stacey Galperin, Miriam Rocek, Hannah Shaffer, Heidi Shaffer, Marlene Devonshire and Meghan Devonshire.

3.    "Sgt. DiJiacomo" shall refer to Delaware State Police Sergeant Mark DiJiacomo.

4.    "Senator Santorum" shall refer to United States Senator Rick Santorum.

5.    "Senator Santorum's Staff" shall refer to Senator Santorum's present and former employees, consultants, representatives, agents and attorneys, including but not limited to members of his Senatorial and campaign staff.

6.    "ISI" shall refer to the Intercollegiate Studies Institute, Inc., the publisher of *It Takes a Family* by Senator Santorum, and its present and former employees, consultants, representatives, agents and attorneys, including but not limited to any third parties with which it contracted to provide publicity, security or event organization services.

7.    The "Store" shall refer to the Barnes & Noble book store at 4801 Concord Pike, Wilmington, Delaware 19803.

8.    The "Store Staff" shall refer to present and former managers, employees, agents, representatives, attorneys and owners of the Store.

9.    "Barnes & Noble" shall mean Barnes & Noble, Inc., its parent, subsidiary and affiliated companies, and its and their present and former employees, consultants, representatives, agents and attorneys.

10.    The "Delaware State Police" shall refer to the Delaware State Police and the Division of State Police of the State of Delaware Department of Safety and Homeland Security and its present and former troopers, employees, consultants, representatives, agents and attorneys, including but not limited to Sgt. DiJiacomo.

11.    "New York Close Protection Services", "NYCPS" or "you" shall refer to New York Close Protection Services, Inc. and its present and former employees, consultants, representatives, agents and attorneys, including but not limited to Floyd Resnick, a/k/a Floyd Mesnick.

12.    The "Event" shall refer to Senator Santorum's book signing for his book *It Takes a Family* and/or discussion that occurred at the Store on August 10, 2005.

13.    The "Incident" shall refer to the ejection, removal or arrest of Plaintiffs from the Store prior to the beginning of the Event which is the basis for the Complaint in this case.

14.    The words "any" and "all" shall be construed as "any and all," and in the broadest sense to bring within the scope of the document requests and deposition topics all responses that might otherwise be construed to be outside of its scope.

15. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document requests and deposition topics all responses that might otherwise be construed to be outside of its scope.

16. The word "between" shall be construed as "between or among", and in the broadest sense to bring within the scope of the document requests and deposition topics all responses that might otherwise be construed to be outside of its scope. By way of illustration, a topic referring to all Communications between A, B and C shall include all Communications between A and B, B and C, A and C, or among A, B and C.

17.     The plural of any word shall include the singular and the singular shall include the plural.

18.     "Generate," "generated," or "generating," when used in reference to a document, shall mean drafting, writing, crafting, editing, modifying, copying, proofreading, reviewing, or otherwise creating or changing the text or other contents of that document.

19.     The terms "relating to" and "related to" shall be construed broadly and include but not be limited to concerning, evidencing, arising from, commenting on, responding to, showing, describing, regarding, analyzing, reflecting, supporting, mentioning or constituting.

20.     The term "regarding" shall be given the same construction as the term "relating to".

21.     "Person" or "persons" shall mean natural persons as well as firms, partnerships, associations, institutions, joint ventures, corporations, governmental entities, administrative agencies, professional associations, corporations, business entities, and every other organization of whatever sort.

22. The word "Investigation" shall be construed broadly and include but not be limited to any inquiries or research into, or examinations, inspections, reviews or analysis of a given event or subject matter, whether formal or informal.

23.    "Document" is used in the broadest possible sense and means, without limitation, any written, printed, typed, photostated, photographic, computerized, recorded or otherwise reproduced communication or representation, whether composed of letters, words, numbers, pictures, sounds, or symbols or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any non-conforming notes or other markings. Without limiting the generality of the foregoing, the term "document" includes, but is not limited to, correspondence, e-mail, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements or work papers, accounts, analytical records, reports and summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings, or other communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, phonograph recordings, films, tapes, computer and word processor disks, data cells, drums, print-outs, all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the foregoing.

24.    "Communication" shall mean any written or verbal statement from one person or entity to another, whether conveyed orally, in writing, electronically, or by other means and whether received or not, including any such statements between officers, directors, employees or agents of the same entity.

25.    "Disciplinary Document" shall mean any formal or informal censure, reprimand, caution, admonition or other communication of disapproval.

26.    If you decline to produce any document or part thereof based upon a claim of privilege or any other claim of immunity from discovery, then you must provide a statement setting forth, as to each such document:

(a)    The name and job title of each author, writer, or sender of the document;

(b)    The name and job title of each recipient, addressee, or other person to whom the original or any copy of the document was sent or furnished;

(c)    The type of document (e.g. letter, memorandum, report, etc.);

(d)    A description of the nature and subject matter of the document sufficient to permit Plaintiffs and the Court to determine whether it is privileged or otherwise immune from discovery;

(e)    The basis for the claim of privilege or immunity from discovery; and

(f)    The date of creation or transmittal of the document, or an estimate of that date, indicated as such, if no date appears on the document.

## SCHEDULE A

## DOCUMENT REQUESTS

    1.    All documents, including but not limited to Communications, referring or

relating to the deposition topics in Schedule A to the Subpoena noticing a deposition pursuant to

Fed. R. Civ. P. 30(b)(6).

    2.    All documents, whenever and by whomever generated, referring or relating

to the Event, including but not limited to:

        (a)    All publicity materials for the Event, including but not limited to event advertisements, web pages, emails, flyers and posters, whether distributed or posted physically or electronically;

        (b)    All memoranda or summaries of the Event, either by NYCPS or by any other person;

        (c)    All documents, including but not limited to Communications, referring or relating to the scheduling of the Event;

        (d)    All documents, including but not limited to Communications, referring or relating to the format of the Event; and

        (e)    All statements, press releases, or talking points referring or relating to the Event, whether generated before the Event or afterward.

    3.    All documents, whenever and by whomever generated, referring or relating

to the Incident, including but not limited to:

        (a)    All formal and informal memoranda or summaries of the Incident, either by NYCPS or by any other person;

        (b)    All Communications by NYCPS regarding the Incident, including any formal or informal internal memoranda or Communications regarding the Incident;

        (c)    All notes taken during conversations with NYCPS or others present during the Incident;

        (d)    All statements, press releases, or talking points referring or relating to the Incident; and

(e)     All documents in any way referring or referring or relating to any Investigation of the Incident by NYCPS, ISI, Barnes & Noble, Store Staff, the Delaware State Police or other persons.

4.     All documents referring or related to security at the Event or the Incident, including but not limited to any contracts or Communications between NYCPS and any other persons coordinating, managing or providing security for the Event, including but not limited to Sgt. DiJiacomo or the Delaware State Police.

5.     Documents sufficient to identify any employees, agents, servants, attorneys or other representatives of NYCPS or any independent contractors hired by NYCPS who were present at the Event or who were at the Store in the hours preceding it.

6.     All documents, including but not limited to Communications, referring or relating to any Plaintiff.

7.     All documents, including but not limited to Communications, referring or relating to Sgt. DiJiacomo.

8.     All documents that constitute, refer, or relate to statements by any NYCPS officer, employee, or representative referring or relating to the Event or the Incident.

9.     All documents that constitute, refer or relate to NYCPS's rules, regulations, policies or procedures, whether formal or informal, regarding ejection of members of the public from events, including but not limited to those governing book signings or other appearances by public figures and including but not limited to those related to the decision to request that the police eject members of the public from events.

10.     All documents that constitute, refer or relate to NYCPS's rules, regulations, policies or procedures, whether formal or informal, regarding the retention or destruction of documents, including but not limited to electronic documents and the documents requested in the foregoing requests.

11.    All Disciplinary Documents relating to Floyd Resnick, a/k/a Floyd

Mesnick, including but not limited to:

      (a)    Any Disciplinary Documents he received as a result of his role in the Event and the Incident;

      (b)    All Disciplinary Documents he has received since he became affiliated with NYCPS; and

      (c)    All Disciplinary Documents he received from any law enforcement agencies or persons providing security services prior to or during his affiliation with NYCPS.

12.    All Disciplinary Documents relating to any other NYCPS officer,

employee, agent, independent contractor or representative present during the Event or in the

hours before the Event, including but not limited to:

      (a)    Any Disciplinary Documents received by such person as a result of his or her role in the Event and the Incident;

      (b)    All Disciplinary Documents received by any such person since he or she became affiliated with NYCPS; and

      (c)    All Disciplinary Documents received by any such person from any law enforcement agencies or persons providing security services prior to or during his or her affiliation with NYCPS.

13.    All actions taken by Floyd Resnick, a/k/a Floyd Mesnick, related to the

Event or the Incident.