## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------x
STACEY GALPERIN, MIRIAM ROCEK,              :
HANNAH SHAFFER, HEIDI SHAFFER,              :
and MARLENE DEVONSHIRE, as the              :
Natural Guardian of MEGHAN DEVONSHIRE :
                                            :
              Plaintiffs,                   :
     v.                                     :   Civil Action No. 06-359 (GMS)
                                            :
DELAWARE STATE POLICE                       :
SERGEANT MARK DIJIACOMO, and                :
JANE DOE,                                   :
                                            :
              Defendants.                   :
-----------------------------------------------------------x
```

## NOTICE OF FILING OF FIRST AMENDED COMPLAINT

TO:     Ralph K. Durstein III, Esquire
        Deputy Attorney General
        Carvel State Office Building
        820 N. French Street, 6th Floor
        Wilmington, Delaware 19801

     **PLEASE TAKE NOTICE** that pursuant to the Stipulation and Order approved

by the Court on October 25, 2006, F.R.Civ.P. 15(a), and the consent of defendant Mark

DiJiacomo by his counsel, plaintiffs have today filed their First Amended Complaint.

**ROSENTHAL, MONHAIT& GODDESS, P.A.**

By: _____

Norman M. Monhait (#1040)
919 Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
  Email: nmonhait@rmgglaw.com

HANGLEY ARONCHICK SEGAL& PUDLIN
Gordon A. Einhorn (Admitted *pro hac vice*)
Paul W. Kaufman (Admitted *pro hac vice*)
30 N. Third Street, Suite 700
Harrisburg, PA 17101
(717) 364-1004
  Attorneys for Plaintiffs

OF COUNSEL:

AMERICAN CIVIL LIBERTIES UNION
  OF PENNSYLVANIA
Mary Catherine Roper (Pro Hac Vice Pending)
P.O. Box 40008
Philadelphia, PA 19106

Witold Walczak
313 Atwood Street
Pittsburgh, PA 15213

Seith Kreiner
3400 Chestnut Street
Philadelphia, PA 19104

AMERICAN CIVIL LIBERTIES UNION
  OF DELAWARE
Julia Graff (#4708)
100 W. 10th Street, Suite 309
Wilmington, Delaware 19801

December 15, 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **STACEY GALPERIN, MIRIAM ROCEK, HANNAH SHAFFER, and MARLENE DEVONSHIRE, as the Natural Guardian of MD, a minor** : | |
| : | |
| **Plaintiffs,** : | |
| : | |
| v.                                     : | Civil Action No.:  06-cv-359 (GMS) |
| **DELAWARE STATE POLICE SERGEANT** : | **JURY TRIAL DEMANDED** |
| **MARK DIJIACOMO, BECKY BARRETT- TOOMEY, and ELLEN MELROSE** : | |
| **Defendants.** : | |

## <u>FIRST AMENDED COMPLAINT</u>

1.     Plaintiffs Stacey Galperin, Miriam Rocek, Hannah Shaffer and Marlene

Devonshire, as the natural guardian of MD, file this Complaint against Sergeant Mark DiJiacomo

of the Delaware State Police, Becky Barrett-Toomey and Ellen Melrose, who conspired to

violate Plaintiffs' First Amendment civil rights to free speech, free assembly and to petition for

redress of grievances and whose conspiracy resulted in the unconstitutional arrest of Plaintiffs

Stacey Galperin and Miriam Rocek.

2.     Defendants conspired to expel Plaintiffs Galperin, Rocek, Shaffer and MD

from the site of a public book signing and discussion held by United States Senator Rick

Santorum solely because of Plaintiffs' political beliefs and the viewpoint of Plaintiffs' speech

and without approval of the management of the Barnes and Noble bookstore where the event was

to occur.  Defendant DiJiacomo threatened to arrest Plaintiffs Galperin, Rocek, Shaffer and MD

if they did not immediately leave the store and subsequently arrested Plaintiffs Galperin and

Rocek.  Sergeant DiJiacomo's threats of arrest of all Plaintiffs and actual arrest of Plaintiffs

Galperin and Rocek prevented Plaintiffs from hearing from Senator Santorum, including

Plaintiffs who are Pennsylvania residents and were constituents of the Senator.

        3.    Plaintiffs seek redress for the deprivation of their First and Fourth

Amendment rights and for the emotional distress caused by Sergeant DiJiacomo's false arrest

and unlawful threats.

## THE PARTIES

        4.    Plaintiff Stacey Galperin is a United States citizen and a Delaware

resident.

        5.    Miriam Rocek is a United States citizen and a Delaware resident.

        6.    Hannah Shaffer is a United States citizen and a Pennsylvania resident.

        7.    Marlene Devonshire and MD are United States citizens and Pennsylvania

residents.

        8.    Delaware State Police Sergeant Mark DiJiacomo is an individual residing

in the state of Delaware.

        9.    Becky Barrett-Toomey is, on information and belief, an individual

residing in the Commonwealth of Pennsylvania.  At the time of the events described in this

Complaint she was, on information and belief, a member of Senator Santorum's promotional

team.

        10.    Ellen Melrose is, on information and belief, an individual residing in the

Commonwealth of Pennsylvania.  At the time of the events described in this Complaint she was,

on information and belief, a member of Senator Santorum's promotional team.

## JURISDICTION AND VENUE

11.     Plaintiffs seek to vindicate their rights protected by the First, Fourth and Fourteenth Amendments to the United States Constitution and by 42 U.S.C. § 1983, their right to be free of false arrest and their rights under Article I, sections 6, 9, and 16 of the Delaware Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4) and 1367. This Court has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202 to declare the rights of the parties and to grant all further necessary and proper relief.

12.     Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events that form the basis for this Complaint primarily occurred in this District.

## FACTS

13.     On August 10, 2005, United States Senator Rick Santorum of Pennsylvania ("Senator Santorum" or "Santorum") appeared at the Barnes & Noble book store at 4801 Concord Pike, Wilmington, Delaware 19803 (the "Store" or "Barnes & Noble").

14.     Senator Santorum's appearance was advertised as a signing for his book *It Takes a Family* and as a discussion with the Senator (the "Santorum Event" or the "Event"). The Event took place during the regular hours of operation of the Store.

15.     Barnes & Noble was at all relevant times responsible for deciding whether to open the Store to the public or to exclude members of the public from the Store.

16.     The Santorum Event was open to the public.

17.     Neither the advertisement for the Event nor any of the signs at the Store stated restrictions of any kind on the persons who could attend the Event, and specifically neither the advertisement for the Event nor any of the signs at the Store indicated that anyone who

disagreed with Senator Santorum or who wished to question him regarding his political beliefs and opinions would be excluded.  Instead, the Event was billed as a "discussion."

18.    Prior to August 10, 2005, Senator Santorum's publishing company, ISI Books, through a party with which it contracted, New York Close Protection Services, Inc., contracted for the services of Sergeant Mark DiJiacomo ("Sergeant DiJiacomo" or "DiJiacomo") of the Delaware State Police as a guard for the Event to act under the direction of the Event's organizers.

19.    Sergeant DiJiacomo acted as a guard for the Santorum Event, appearing in full uniform and armed with a visible handgun.

20.    Upon information and belief, while acting as a guard for the Event, DiJiacomo was paid by the Delaware State Police and maintained all powers and duties of his position as a Sergeant with the Delaware State Police.

21.    Plaintiffs Stacey Galperin ("Galperin"), Miriam Rocek ("Rocek"), Hannah Shaffer ("Shaffer"), and MD, along with several friends and classmates, arrived at the Event prior to Senator Santorum's appearance.  It was their intention to attend the Event for the purpose of hearing the Senator's remarks and respectfully questioning and challenging the Senator concerning his views and to do so in accordance with any rules governing the Event.

22.    While waiting for the Senator to arrive, Plaintiffs Galperin, Rocek, Shaffer and MD conversed among themselves about their questions for Senator Santorum and about their views on issues of importance to them and to the Senator.

23.    It is alleged on information and belief that Defendants Becky Barrett-Toomey ("Barrett-Toomey") and Ellen Melrose ("Melrose"), members of Senator Santorum's promotional team for the Event, overheard a portion of Plaintiffs' discussion and determined that

Plaintiffs should be ejected from the Event because their political viewpoints were different from Senator Santorum's and because of a concern that they would publicly express disagreement with Senator Santorum.

24.     At all times while in the store, Plaintiffs comported themselves in a respectful and civil manner.

25.     Plaintiff MD was wearing a shirt that displayed the words "Radical Feminist" and Plaintiff Rocek was wearing a gay pride pin.  These items were visible to Defendants Barrett-Toomey, Melrose and DiJiacomo.

26.     Defendant Barrett-Toomey did not work for Barnes & Noble and was not instructed by any Barnes & Noble employee or agent to have Plaintiffs ejected.

27.     Defendant Melrose did not work for Barnes & Noble and was not instructed by any Barnes & Noble employee or agent to have Plaintiffs ejected.

28.     Upon information and belief, Defendants Barrett-Toomey, Melrose and DiJiacomo discussed the attendance of Plaintiffs Galperin, Rocek, Shaffer and MD at the Event and jointly determined that DiJiacomo would eject Plaintiffs Galperin, Rocek, Shaffer and MD from the Store because of their political viewpoints and because, in defendants' view, Plaintiffs "had an agenda" and were likely to express disagreement with Senator Santorum.

29.     Pursuant to the joint determination with Defendants Barrett-Toomey and Melrose, Defendant DiJiacomo approached Plaintiffs Galperin, Rocek, Shaffer and MD, ordered them to leave the premises and told them that if they did not immediately leave they would be arrested for trespass.

30.     Sergeant DiJiacomo further threatened Plaintiffs Galperin, Rocek, Shaffer and MD by explaining the consequences that an arrest would have on them, including a

description of the detention facilities to which they would be taken if arrested and the likely duration of their stay at those facilities.

31.　　Sergeant DiJiacomo subsequently threatened Plaintiffs Galperin and Rocek by noting the negative effect that their arrest would have on their prospects for college admission.

32.　　Sergeant DiJiacomo subsequently threatened those Plaintiffs over the age of eighteen with prosecution for contributing to the delinquency of those in their group who were minors.

33.　　No Barnes & Noble employee or agent ever instructed Defendant DiJiacomo to eject Plaintiffs from the Store.

34.　　No Barnes & Noble employee or agent ever instructed Plaintiffs to leave the Store.

35.　　Under threat of arrest, Plaintiffs Shaffer and MD left the premises.

36.　　Plaintiffs Galperin and Rocek questioned Defendant DiJiacomo concerning the reason for their ejection from the Store at which point Sergeant DiJiacomo told Plaintiffs Galperin and Rocek that they were under arrest.

37.　　Defendant DiJiacomo demanded identification from Plaintiff Galperin, who produced it as ordered.

38.　　Sergeant DiJiacomo then ordered Plaintiffs Galperin and Rocek to accompany him to his car, which was parked outside the Store.

39.　　Because they had been placed under arrest, Plaintiffs Galperin and Rocek left the Store and accompanied Sergeant DiJiacomo to his vehicle.

40.    Sergeant DiJiacomo demanded that Plaintiff Rocek produce identification, and she complied.

41.    Sergeant DiJiacomo took the identification from Plaintiffs Galperin and Rocek into the front of his vehicle.  Upon information and belief, he remained there long enough to contact the Delaware State Police dispatcher and have the dispatcher run a check of Plaintiffs Galperin and Rocek's identifications.

42.    At one point during the time Plaintiffs Galperin and Rocek were standing with him outside, Sergeant DiJiacomo ordered Plaintiff Rocek to put her hands on his car. Plaintiff Rocek complied with this order.  Sergeant DiJiacomo stood behind Plaintiff Rocek and told her he was going to handcuff her.

43.    Sergeant DiJiacomo commanded Plaintiffs Galperin and Rocek to call their parents to inform them that they had been arrested.  He further told them to tell their parents that they would need $1000 in cash for bail money.  Both Plaintiffs complied with this order.

44.    Plaintiff Galperin conversed with her father, who is an attorney.  Sergeant DiJiacomo was aware that Mr. Galperin is an attorney based on a conversation with Plaintiff Galperin earlier that evening.

45.    Mr. Galperin was put onto the phone with Sergeant DiJiacomo and requested details of the charge from Sergeant DiJiacomo.  Sergeant DiJiacomo provided no details.

46.    Subsequent to Sergeant DiJiacomo's conversation with Mr. Galperin, Plaintiffs Galperin and Rocek were released from custody on the condition that they leave the Store and the Concord Mall.  Sergeant DiJiacomo told Plaintiffs Galperin and Rocek that they

had been banned for life from the Store and the area of the Concord Mall, and would be arrested if they ever returned.

47.     Sergeant DiJiacomo was never instructed by any member of the Barnes & Noble staff or management to eject Plaintiffs or to inform Plaintiffs that they had been permanently banned from the Store.

48.     Upon information and belief, Sergeant DiJiacomo never consulted with the owners or managers of the Concord Mall regarding either the immediate exclusion or the purported lifetime ban of Plaintiffs Galperin and Rocek.

49.     From the time that Plaintiffs Galperin and Rocek were told that they were under arrest until Defendant DiJiacomo released them from custody, they were not free to leave his custody.

50.     From the time that Plaintiffs Galperin and Rocek were told that they were under arrest until Defendant DiJiacomo told them they could leave, Plaintiffs believed that they were under arrest and not free to leave his custody.

51.     After leaving the Store under threat of arrest, Plaintiff Shaffer called her mother, Heidi Shaffer ("Mrs. Shaffer") to inform her of what had occurred.  Mr. Shaffer drove to the Store to pick up her daughter and her daughter's friends who had been ejected from the Store.

52.     Leaving Hannah Shaffer and the others in the car in the parking lot of the Store, Mrs. Shaffer went into the Store to find Sergeant DiJiacomo or a store employee who could explain the expulsion of Plaintiffs.

53.     While Mrs. Shaffer was in the Store, Sergeant DiJiacomo saw Plaintiff Shaffer in the parking lot and drove his vehicle over to her.

54.    Sergeant DiJiacomo again threatened Plaintiff Shaffer with arrest for trespass and for contributing to the delinquency of the minors with her.

55.    Plaintiff Shaffer explained that she had returned to the Store's parking lot with her mother, who had gone into the Store seeking Sergeant DiJiacomo.

56.    Sergeant DiJiacomo told Plaintiff Shaffer that she was under arrest and demanded her identification.

57.    Mrs. Shaffer saw the confrontation in the parking lot and left the Store, approaching Sergeant DiJiacomo and interrupting the attempt to arrest her daughter.

58.    Mrs. Shaffer confronted Sergeant DiJiacomo, who claimed that he had overheard the students saying that they were going to cause trouble on private property and that the students had an "agenda."

59.    At no time did any of Plaintiffs threaten to make or cause any disturbance or take any action or make any statement that could reasonably give rise to a belief that they posed such a threat.

60.    Mrs. Shaffer informed Sergeant DiJiacomo that a Store employee had informed her that Plaintiffs were welcome to return to the Barnes & Noble.  Sergeant DiJiacomo replied that neither Barnes & Noble nor the Concord Mall had the authority to allow Plaintiffs to return to the Store.

61.    Plaintiffs Galperin, Rocek, Shaffer, and MD were unable to attend the Event and hear from or express their views to Senator Santorum because they had been ejected from the Store by Sergeant DiJiacomo before Senator Santorum arrived.

62.    Plaintiffs suffered harm as a result of the threats leveled against them and by being denied access to a government official because of their political beliefs.

63.     At all times during the events described herein, Sergeant DiJiacomo was acting under the color of state law and under his authority as an officer of the Delaware State Police.

## COUNT I

**Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for
Violation of Plaintiffs' Right To Freedom Of Speech as Protected
by the First Amendment to the U.S. Constitution**

64.     Plaintiffs incorporate herein by reference the proceeding paragraphs of this Complaint.

65.     Acting under color of state law, Defendant DiJiacomo deprived Plaintiffs of their First Amendment right to freedom of speech by threatening Plaintiffs with arrest and ejecting Plaintiffs Galperin, Rocek, Shaffer and MD from the Store because of their political beliefs. Defendants Barrett-Toomey and Melrose acted jointly with Sergeant DiJiacomo in his deprivation of Plaintiffs' First Amendment right to freedom of speech.

66.     Sergeant DiJiacomo's threats to arrest Plaintiffs and his actual arrest of Plaintiffs Galperin and Rocek prevented Plaintiffs from exercising their right to speak freely and express themselves in a public forum.

67.     Defendants' actions violated Plaintiffs' clearly established rights.

68.     Defendants Barrett-Toomey, Melrose and DiJiacomo acted intentionally to deprive Plaintiffs of their right to free speech and expression under the First Amendment to the United States Constitution, or in wanton, reckless disregard of that right.

69.     Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a conscious indifference to Plaintiffs' constitutional right to free speech and expression.

10

70.     Plaintiffs were harmed by the deprivation of their constitutional right to free speech and expression by Defendants Barrett-Toomey, Melrose and DiJiacomo and are entitled to redress for that violation and for the emotional damage done to them by Defendants' actions.

## COUNT II

**Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for
Violation of Plaintiffs' Right To Freedom Of Assembly as Protected
by the First Amendment to the U.S. Constitution**

71.     Plaintiffs incorporate herein by reference paragraphs 1-63 of this Complaint.

72.     Acting under color of state law, Defendant DiJiacomo deprived Plaintiffs Galperin, Rocek, Shaffer and MD of their First Amendment right peaceably to assemble by threatening Plaintiffs with arrest and ejecting them from the Store because of their political beliefs.  Defendants Barrett-Toomey and Melrose acted jointly with Sergeant DiJiacomo in his deprivation of Plaintiffs' First Amendment right peaceably to assemble.

73.     Plaintiffs had gathered at the Store to listen to a government official speak on matters of public interest.

74.     Plaintiffs Hannah Shaffer and MD had gathered at the Store to listen to their own elected representative speak on matters of public interest.

75.     Plaintiffs were at all times peaceful.

76.     Because of Sergeant DiJiacomo's threats of arrest and actual arrest of Plaintiffs Galperin and Rocek, Plaintiffs Galperin, Rocek, Shaffer, and MD were forced to leave a location where they had a right to gather unless excluded by the store management in control of the premises.

11

77.    Defendants' actions violated the clearly established rights of Galperin, Rocek, Shaffer, and MD.

78.    Defendants Barrett-Toomey, Melrose and DiJiacomo acted intentionally to deprive Plaintiffs Galperin, Rocek, Shaffer, and MD of their right peaceably to assemble under the First Amendment to the United States Constitution, or in wanton, reckless disregard of that right.

79.    Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a conscious indifference to Plaintiffs' constitutional right peaceably to assemble.

80.    Plaintiffs Galperin, Rocek, Hannah Shaffer, and MD were harmed by the deprivation of their constitutional right peaceably to assemble by Defendants Barrett-Toomey, Melrose and DiJiacomo and are entitled to redress for that violation and for the emotional damage done to them by Defendants' actions.

## COUNT III

**Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for Violation of Plaintiffs' Right To Petition for Redress of Grievances as Protected by the First Amendment to the U.S. Constitution**

81.    Plaintiffs incorporate herein by reference paragraphs 1-63 of this Complaint.

82.    Acting under color of state law, Defendant DiJiacomo deprived Plaintiffs of their First Amendment right to petition government officials for a redress of grievances by threatening Plaintiffs with arrest and ejecting them from the store in order to prevent their intended discussion with Senator Santorum.  Defendants Barrett-Toomey and Melrose acted

jointly with Sergeant DiJiacomo in his deprivation of Plaintiffs' First Amendment right to petition for redress of grievances.

83.     Plaintiffs had gathered at the Store to participate in a discussion with a government official on matters of public interest.

84.     Plaintiffs Hannah Shaffer and MD had gathered at the Store to participate in a discussion with their own elected representative on matters of public interest.

85.     Sergeant DiJiacomo's threats of arrest and actual arrest of Plaintiffs Galperin and Rocek prevented Plaintiffs from petitioning a government official for the redress of their grievances.

86.     Defendants' actions violated Plaintiffs' clearly established rights.

87.     Defendants Barrett-Toomey, Melrose and DiJiacomo acted intentionally to deprive Plaintiffs of their right to petition for redress of grievances under the First Amendment to the United States Constitution, or in wonton, reckless disregard of that right.

88.     Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a conscious indifference to Plaintiffs' constitutional right to petition for redress of grievances.

89.     Plaintiffs were harmed by the deprivation of their constitutional right to petition for redress of grievances by Defendants Barrett-Toomey, Melrose and DiJiacomo and are entitled to redress for that violation and for the emotional damage done to them by Defendants' actions.

## COUNT IV

**Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for Violation of Plaintiffs' Right To Be Free of Unreasonable Seizure as Protected by the Fourth Amendment to the U.S. Constitution**

90.     Plaintiffs incorporate herein by reference paragraphs 1-63 of this Complaint.

91.     Acting under color of state law, Defendant DiJiacomo deprived Plaintiffs Galperin and Rocek of their Fourth Amendment right to be free from unreasonable seizure by arresting them without probable cause. Defendants Barrett-Toomey and Melrose acted jointly with Sergeant DiJiacomo in his deprivation of Plaintiffs' Fourth Amendment right to be free from unreasonable seizure.

92.     Sergeant DiJiacomo was never instructed by the owner, manager, or any employee of the Store to remove Plaintiffs or told that Plaintiffs were unwelcome there.

93.     Sergeant DiJiacomo ordered Plaintiffs to leave the Store solely upon his own volition and that of Defendants Barrett-Toomey and Melrose.

94.     Sergeant DiJiacomo arrested Plaintiffs Galperin and Rocek only because they failed to follow his order, which was unlawful and unjustified because it did not express the desire of the Store management.

95.     Plaintiffs Galperin and Rocek's failure to leave the Store, where they had the constitutional right to remain, was reasonably foreseeable to Defendants DiJiacomo, Barrett-Toomey and Melrose.

96.     Defendant DiJiacomo's arrest of Plaintiffs when they failed to leave the Store was reasonably foreseeable to Defendants DiJiacomo, Barrett-Toomey and Melrose and was an action in furtherance of the conspiracy to deprive Plaintiffs Galperin and Rocek of their rights under the First and Fourth Amendments to the United States Constitution.

97.     Defendant DiJiacomo's arrest of Plaintiffs Galperin and Rocek without probable cause violated their right under the Fourth Amendment to the United States Constitution to be free from an unreasonable, warrantless seizure of their persons.

98.     Defendants' actions violated Plaintiffs' clearly established rights.

99.     Defendant DiJiacomo acted intentionally to deprive Plaintiffs Galperin and Rocek of their constitutional rights under the Fourth Amendment to the United States Constitution, or in wanton, reckless disregard of those rights.

100.     Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a conscious indifference to the constitutional rights under the Fourth Amendment of Plaintiffs Galperin and Rocek.

101.     Plaintiffs Galperin and Rocek were harmed by the deprivation of their constitutional rights by Defendants Barrett-Toomey, Melrose and DiJiacomo and are entitled to redress for that violation and for the emotional damage done to them by Defendants' actions.

## COUNT V

### Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for Conspiracy to Violate Plaintiffs' Rights Under the First and Fourth Amendments to the U.S. Constitution

102.     Plaintiffs incorporate herein by reference paragraphs 1-63 of this Complaint.

103.     Upon information and belief, Defendants Barrett-Toomey, Melrose and DiJiacomo, and perhaps other individuals acting in concert therewith, entered into a combination, agreement, or understanding to violate Plaintiffs' constitutional rights under the First and Fourth Amendments by using the apparent authority of Defendant DiJiacomo to

threaten Plaintiffs with arrest, eject them from the Store, and arrest Plaintiffs Galperin and

Rocek, solely because of their political views and without probable cause.

104.    Defendants Barrett-Toomey, Melrose and DiJiacomo each acted in

furtherance of said agreement, combination or understanding by, *inter alia*, discussing the

Plaintiffs and deciding to eject them from the Store, threatening Plaintiffs with arrest and

arresting Plaintiffs Galperin and Rocek.

105.    The aforementioned conspiracy violates 42 U.S.C. § 1983.

106.     Defendants' actions violated Plaintiffs' clearly established rights.

107.    Defendants DiJiacomo, Barrett-Toomey and Melrose acted intentionally to

deprive Plaintiffs of their constitutional rights under the First and Fourth Amendments to the

United States Constitution, or in wanton, reckless disregard of those rights.

108.    Defendants' actions constituted an extreme departure from the ordinary

standard of care and evidenced a conscious indifference to Plaintiffs' constitutional rights under

the First and Fourth Amendments to the United States Constitution.

109.    Plaintiffs were harmed by the deprivation of their constitutional rights by

Defendants Barrett-Toomey, Melrose and DiJiacomo and are entitled to redress for that violation

and for the emotional damage done to them by Defendants' actions.

<u>**COUNT VI**</u>

**Pursuant to Delaware Law for Declaratory Relief and Damages**
**for False Arrest and Imprisonment**

110.    Plaintiffs incorporate herein by reference paragraphs 1-63 of this

Complaint.

16

111. During the period after Sergeant DiJiacomo told Plaintiffs Galperin and Rocek that they were under arrest and before he released them from custody, they were unlawfully restrained by him.

112. During that period, Plaintiffs Galperin and Rocek were not free to leave and were under Defendant DiJiacomo's control.

113. Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a wanton disregard or conscious indifference to Plaintiffs' right to be free from unlawful arrest and imprisonment.

114. Plaintiffs Galperin and Rocek were harmed by this unlawful detention by Defendants Barrett-Toomey, Melrose and DiJiacomo and are entitled to redress for that violation and for the harm done to them by Defendants' actions.

## COUNT VII

### Pursuant to the Delaware Constitution for Damages for Unreasonable Seizure

115. Plaintiffs incorporate herein by reference paragraphs 1-63 of this Complaint.

116. By conspiring to arrest and arresting Plaintiffs Galperin and Rocek without a warrant and without probable cause, Defendants Barrett-Toomey, Melrose and DiJiacomo violated Plaintiff Galperin and Rocek's rights under Article I, Section 6 of the Delaware Constitution.

117. Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a wanton disregard or conscious indifference to Plaintiffs' right to be free from unreasonable seizure.

118.    Plaintiffs Galperin and Rocek were harmed by this unlawful detention by Defendants Barrett-Toomey, Melrose and DiJiacomo and, pursuant to Article I, Section 9 of the Delaware Constitution, are entitled to redress for that violation and for the harm done to them by Defendants' actions.

## COUNT VIII

### Pursuant to the Delaware Constitution for Damages for Violations of Plaintiffs' Right to Assemble

119.    Plaintiffs incorporate herein by reference paragraphs 1-63 of this Complaint.

120.    Plaintiffs' assembly was at all times orderly.

121.    In taking the foregoing actions, including but not limited to threatening Plaintiffs with arrest, actually arresting Plaintiffs Galperin and Rocek, and ejecting Plaintiffs Galperin, Rocek, Shaffer and MD from the Store, Defendants Barrett-Toomey, Melrose and DiJiacomo violated the rights of Plaintiffs Galperin, Rocek, Shaffer, and MD under Article I, Section 16 of the Delaware Constitution to assemble in an orderly manner.

122.    Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a wanton disregard or conscious indifference to the right of Plaintiffs Galperin, Rocek, Shaffer, and MD to assemble.

123.    Plaintiffs Galperin, Rocek, Shaffer, and MD were harmed by this unlawful detention by Defendants Barrett-Toomey, Melrose and DiJiacomo and, pursuant to Article I, Section 9 of the Delaware Constitution, are entitled to redress for that violation and for the harm done to them by Defendants' actions.

## COUNT IX

### Pursuant to the Delaware Constitution for Damages for Violations of

**Plaintiffs' Right to Redress of Grievances**

124.    Plaintiffs incorporate herein by reference paragraphs 1-63 of this Complaint.

125.    In taking the foregoing actions, including but not limited to threatening Plaintiffs with arrest, actually arresting Plaintiffs Galperin and Rocek, and ejecting Plaintiffs Galperin, Rocek, Shaffer and MD from the Store, Defendants Barrett-Toomey, Melrose and DiJiacomo violated Plaintiffs' rights under Article 1, Section 16 of the Delaware Constitution to apply for redress of grievances.

126.    Defendants' actions constituted an extreme departure from the ordinary standard of care and evidenced a wanton disregard or conscious indifference to Plaintiffs' right to apply for redress of grievances.

127.    Plaintiffs were harmed by this unlawful detention by Defendants Barrett-Toomey, Melrose and DiJiacomo and, pursuant to Article I, Section 9 of the Delaware Constitution, are entitled to redress for that violation and for the harm done to them by Defendants' actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Stacey Galperin, Miriam Rocek, Hannah Shaffer and Marlene Devonshire, as natural guardian of MD, demand judgment in their favor and against Defendants Sergeant Mark DiJiacomo, Becky Barrett-Toomey and Ellen Melrose, including the following:

(a) A declaration that the constitutional rights of Plaintiffs have been violated;

(b) Nominal, compensatory and punitive damages in an amount to be proven at trial;

(c) Attorneys' fees and costs of suit;

(d) Such other relief as the Court deems to be just and proper.

ROSENTHAL, MONHAIT, & GODDESS, P.A.

By_____
Norman M. Monhait (Attorney ID No. 1040)
919 Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433
(302) 658-7567 - facsimile

*Of Counsel:*

HANGLEY ARONCHICK SEGAL & PUDLIN

Gordon A. Einhorn (admitted *pro hac vice*)
Paul W. Kaufman (admitted *pro hac vice*)
30 North Third Street, Suite 700
Harrisburg, PA 17101
(717) 364-1004
(717) 364-1020 – facsimile


AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA

Mary Catherine Roper (admitted *pro hac vice*)
P.O. Box 40008
Philadelphia, PA 19106
(215) 592-1513 x. 116
(215) 592-1343 – facsimile

Witold Walczak
313 Atwood Street
Pittsburgh, PA 15213
(412) 681-7736
(412) 681-8707 – facsimile

Seth Kreimer
3400 Chestnut Street
Philadelphia, PA 19104
(215) 898-7447
(215) 573-2025 – facsimile


AMERICAN CIVIL LIBERTIES FOUNDATION OF DELAWARE

Julia Graff (Attorney ID No. 4708)
100 W. 10th Street, Suite 309
Wilmington, DE 19801
(302) 654-5326 x. 103
(302) 654-3689 – facsimile

*Attorneys for Plaintiffs*

Dated:  December 15, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of December, 2006, a copy of the

**Notice Of Filing Of First Amended Complaint** and the **First Amended Complaint** was

served, by electronic filing, upon:

Ralph K. Durstein III, Esquire
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, Delaware 19801

Norman M. Monhait (#1040)